545 So.2d 260 (1989)
Douglas JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 68882.
Supreme Court of Florida.
June 8, 1989.
Rehearing Denied July 24, 1989.
*261 Michael D. Gelety, Sp. Public Defender, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen. and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
From a third trial on the merits, Douglas Jackson appeals his multiple convictions for first-degree murder and kidnapping and the imposition of the death penalty for three first-degree murder convictions. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. After appellant's first trial, we reversed his convictions and death sentences based on the trial court's failure to grant a continuance due to defense counsel's disabling physical condition. See Jackson v. State, 464 So.2d 1181 (Fla. 1985). A second trial ended in a mistrial. For the reasons expressed below, we now reverse the convictions and sentences, and remand this case to the trial court for proceedings consistent with this opinion.
The relevant facts reflect that in the early morning hours of March 1, 1981, a Pembroke Pines police officer discovered the charred hulk of an automobile alongside a remote stretch of State Road 27 in Broward County. Inside the car were the burned remains of five victims: Walter and Edna Washington, Larry Finney, and two children, Reginald and Terrence Manuel. Autopsies determined that Finney and Walter and Edna Washington died of gunshot wounds, while the two children perished from smoke inhalation. Several days later detectives visited the appellant's home, attempting to locate his estranged wife, Karen Jackson, for questioning. Karen Jackson had been living with the Washingtons and Finney while separated from appellant. During a conversation with appellant, which was tape-recorded, detectives noticed scratches and burns on appellant's face. Appellant explained that he suffered these while attending a barbecue. Detectives left appellant's home and eventually located Karen Jackson, who provided the following testimony at trial.
Karen Jackson stated that on the night of April 30, 1981, appellant, accompanied by his codefendant, Aubrey Livingston, visited the home of Walter and Edna Washington. *262 After forcing his way into the bedroom where she was hiding, appellant ordered his wife to pack her belongings as well as the children's. While Karen Jackson placed the belongings in the back of appellant's camper, the Washingtons and Larry Finney were marched out of the house at gunpoint with their hands behind their backs. Karen Jackson and her children were ordered into the cab of the truck while the Washingtons, their two children, Finney, and Livingston rode in the back. Appellant started driving, returning briefly to the Washingtons' home so Edna Washington could retrieve a jacket for one of the children. He then drove the truck west into a remote part of Broward County before passing an abandoned car several times and stopping. After conferring with Livingston, appellant opened the back of the truck and ordered the victims into the abandoned automobile. Karen Jackson claimed she heard gunshots, exhortations from appellant to Livingston to "hurry up," and then a loud explosion. When appellant returned to the truck, he claimed his face felt like it was "on fire." Livingston was later dropped off at his house while appellant and Karen Jackson returned to appellant's residence. This testimony was fully corroborated by Livingston.
Jackson testified in his own defense, denying any participation in this incident. He stated that the Washingtons and Livingston were drug users and dealers, and that his wife was a drug user, had committed adultery with a number of men, and had abused their children. Jackson claimed he received the burns on his face from a home barbecue fire flashback.
No murder weapon was ever found. Authorities arrested Jackson on March 4, 1981, and he was later indicted on five counts of first-degree murder and six counts of kidnapping. A jury convicted appellant on all counts except the kidnapping charge involving his wife, Karen Jackson.
In the sentencing phase of this trial, the state did not present any additional witnesses. The defense presented four witnesses, including appellant's parents. The jury recommended the death penalty for the murders of Edna Washington and the children, Terrence Manuel and Reginald Manuel. The jury recommended life sentences for the murders of Walter Washington and Larry Finney. Following the jury's recommendations, the trial judge sentenced appellant to death for the murders of Edna Washington, Terrence Manuel, and Reginald Manuel, and imposed consecutive life sentences for the remaining two murders and five kidnapping offenses. In imposing the death sentences, the court found four aggravating circumstances and one mitigating circumstance.
The appellant raises four issues in the guilt phase of this appeal, claiming (1) the prosecutor was allowed to improperly examine and cross-examine witnesses to obtain answers prejudicial to the appellant; (2) the trial judge improperly commented on rulings he made during the course of the trial which prejudiced the defendant; (3) the trial court improperly restricted appellant's examination of certain state witnesses; and (4) the cumulative prejudicial effect of various trial court rulings warrants a mistrial.
In his first point, appellant complains of three separate incidents of alleged prejudicial testimony that resulted from the prosecutor's examination or cross-examination of witnesses at the trial. The primary incident concerned the prosecutor's cross-examination of Jackson which resulted in Jackson's acknowledging his prior trial and convictions for these offenses.
Karen Jackson, the appellant's wife, provided the main testimony against the appellant in both trials. To impeach Karen Jackson's credibility, the defense presented Jackson's own testimony and introduced letters she had written to appellant while he was in the state prison for these offenses. The letters professed love for appellant and sorrow for him. In his testimony, Jackson stated that while awaiting "this trial" he received these letters from Karen Jackson, relating that she loved him, she was sorry for their breakup, she was sorry for him, and she looked forward to reuniting.
*263 During the state's cross-examination of Jackson, he admitted that he was not just "awaiting trial," but that he received the letters while serving a sentence in the state prison following his conviction in a prior trial for these same offenses. The following exchange took place during the state's cross-examination of Jackson:
Q: Where were you, Mr. Jackson, when you received those letters from your wife?
A: In Prison.
Q: You were really awaiting trial there, were you?
A: Yes, I gather.
Q: What?
A: Yes.
Q: You had already been to trial hadn't you?
A: I was awaiting a new one, yes.
Q: You hadn't been granted a new trial, had you?
A: Some of the letters, yes.
Q: But not all of them?
A: No, not all of them, no.
Q: When you were in prison, you weren't awaiting trial; you hadn't been granted a new trial yet, had you?
A: Some of the letters I had, yes.
Q: But not all of them?
A: I just stated that.
Q: And you had been convicted when you were in prison, right?
MR. ZIMMERMAN [defense counsel]: Your honor, I object. That is grossly improper. It's prejudicial. Jack Coyle [the prosecutor] knows it's wrong. And if he persists along that line of question, I will have to move for mistrial.
THE COURT: Denied. Proceed.
Q: That wasn't your status, awaiting trial; your status was convicted, wasn't it?
A: Which side of the fence are you talking about, sir? Some of these letters was [sic] received on both sides.
Q: But at least some of them, your status was as being convicted, correct?
A: Yes.
Appellant contends it was error for the trial court to allow testimony of his previous convictions for these offenses. The state, on the other hand, claims it was proper cross-examination, reasoning that the jury should be informed that Jackson had previously been convicted of these offenses as a result of his wife's testimony and in order to correct the erroneous impression left by defense counsel that Jackson was merely awaiting trial at the time he received the letters. The fact that there has been a prior trial, although not admissible evidence, many times is inadvertently presented to the jury through various means during the course of a second trial. In this instance the presentation of evidence of a prior trial was not inadvertent but intentional. We agree with appellant that it was error for the trial court to allow the prosecutor to question appellant about his previous convictions.
Moreover, we cannot say that this is harmless error. The prejudicial effect upon a jury of testimony that a defendant has been previously convicted of the crimes for which he is now on trial is so damaging that it cannot be said beyond a reasonable doubt that a jury would return a verdict of guilty absent the testimony. This trial concerned the credibility of appellant versus that of his codefendant who had already been convicted of this offense and was awaiting sentencing, and that of the testimony of his estranged wife. The effect on a defendant's credibility can be devastating when the jury hears testimony that on a previous occasion another jury listened to the same testimony and believed beyond a reasonable doubt the defendant was guilty of these crimes. Therefore we cannot conclude the error in this case was harmless.
Jackson next argues that it was error to admit evidence that he had been previously arrested. Livingston had already testified for the state. While cross-examining Livingston, Jackson's counsel asked whether Livingston had ever known appellant to be in trouble with the law. When Livingston answered, "Yes, a few times," appellant's counsel impeached him because Livingston had previously responded negatively to the same question when his deposition was taken. During the defense *264 portion of the trial, Jackson's direct testimony was that Livingston was a criminal, "street-wise guy," who participated in illegal activities. When Jackson was cross-examined, the state asked him whether he knew of Livingston's prior arrest for conspiracy to commit robbery. Without objection from his counsel, Jackson responded that he was unaware of Livingston's prior record. The state then recalled Livingston to the stand and stated that both he and Jackson had been arrested as coconspirators for the robbery conspiracy. Under the circumstances, this was proper impeachment of Jackson's testimony that he was unaware of Livingston's arrest. Viewed in the context of the entire trial, even if the reference to Jackson's arrest was error, it was harmless error. The prejudice was minimal because Livingston further testified that the charges against both of them were dropped.
We also reject appellant's contention under this point that it was error to allow various witnesses to testify that Jackson had physically abused Karen Jackson, including handcuffing her to a bed and beating her. There was no objection to this testimony and, clearly, Jackson's marital problems and treatment of his wife were relevant to the motive for these crimes.
In his second point, Jackson contends the trial judge made improper comments while ruling on various matters during the course of the trial which indicated his bias for the prosecution. We find that the comments which Jackson claims were offensive, when viewed in the totality of this trial, reveal that the trial judge properly exercised his responsibility to conduct a fair trial for appellant. We find no indication in the record that the trial judge was biased or pro-prosecution, and the record, in fact, reveals that the judge was mindful of his duties and sensitive to his judicial role. Cf. Coley v. State, 185 So.2d 472 (Fla. 1966).
In his third point, Jackson claims the trial court erred in granting a motion in limine restricting his cross-examination of a detective concerning two alleged police department reprimands. Jackson alleges that in previous trials the detective had tried to obtain a search warrant "after the fact" and had counseled witnesses to lie on the stand. Appellant asserts that the police department hearing on these violations led to the detective's demotion and temporary suspension from the department. The record also reflects that the detective admitted he had been suspended for three days, but denied he had anything to do with suborning perjury, and that subsequently he had been promoted to captain in the department. We find no error in granting the motion in limine. First, under section 90.609, Florida Statutes (1985), a party may attack the character of a witness only by reputation evidence referring to character relating to truthfulness. No character witnesses testified to the detective's reputation in the community for truthfulness. The evidence proffered by appellant concerned general acts of misconduct, and, under our existing law, that type of evidence must be excluded. Cf. Washington v. State, 432 So.2d 44 (Fla. 1983) (trial court properly excluded evidence that state witness had been dismissed from sheriff's department for writing bad checks and had dealt in stolen firearms). Further, and more important, section 90.610, Florida Statutes (1985), directs that a witness's credibility may be impeached only by convictions of crimes involving dishonesty or false statements. Clearly, a police department reprimand is not a criminal conviction as contemplated by this statute. See Brookings v. State, 495 So.2d 135 (Fla. 1986) (trial court did not abuse discretion by prohibiting questioning of state witness about a false statement arrest which occurred three years prior to trial and of which no record of conviction was presented).
In his fourth point, Jackson contends that the cumulative, prejudicial effect of six trial court rulings denied him a fair trial. (a) Appellant claims error based on the trial court's refusal to permit additional questioning of a juror after the jury was sworn. Appellant requested the further inquiry based on his law clerk's claim that he heard a Broward County sheriff's office *265 employee state that the juror was his friend. The record indicates that the juror, when asked by the prosecutor during voir dire whether he had friends in law enforcement, responded in the affirmative, but stated he had not discussed the case with them. Under these facts, we find no error. (b) Appellant requested a mistrial based on the jury inadvertently seeing the defendant in handcuffs. As we held in Neary v. State, 384 So.2d 881, 885 (Fla. 1980), "the inadvertent sight of the appellant in handcuffs was not so prejudicial that it required a mistrial." (c) Jackson claims that the introduction of photographs depicting the victims' charred remains unnecessarily inflamed the jury and created undue prejudice. The introduction of photographic evidence is within the sound discretion of the trial court, see, e.g., Duest v. State, 462 So.2d 446 (Fla. 1985); Wilson v. State, 436 So.2d 908 (Fla. 1983). These photos were relevant to prove identity and the circumstances surrounding the murders and to corroborate the medical examiner's testimony. See Patterson v. State, 513 So.2d 1257 (Fla. 1987). We find no error in their admission. (d) Appellant claims the admission of testimony revealing that one of the victims, Edna Washington, was pregnant at the time of her death was unduly prejudicial. Appellant objected only to the medical examiner's remarks, although Washington's pregnancy was noted in other testimony without objection. We find no error. (e) During his opening statement, the prosecutor made an allegedly improper comment relating the crime to appellant's defense that he was barbecuing at the time of this incident. Defense counsel's motion for mistrial was subsequently denied. While we are concerned with the tenor of the prosecutor's statement, we are not prepared to say that the remark warranted a mistrial. We would, however, warn against the prosecutor repeating such statements on retrial. (f) And, finally, the court did not err in allowing the introduction of.30 caliber shell-casings found in front of the defendant's home.
However, because the prosecutor erroneously elicited testimony that Jackson had previously been convicted of these crimes, we must reverse the convictions and remand this case for a new trial.
It is so ordered.
McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
GRIMES, J., dissents with an opinion, in which EHRLICH, C.J. and OVERTON, J., concur.
GRIMES, Justice, dissenting.
I agree that the cross-examination of Jackson had the effect of erroneously permitting the jury to hear that he had previously been convicted of this crime. However, in the context of the entire case, I believe that this was harmless error beyond a reasonable doubt.
Larry Finney had been seeing Jackson's wife, Karen, and the two of them were living at the home of Walter and Edna Washington. Jackson had been looking for Karen for a couple of weeks before the murders. He told someone on the afternoon of the murders that he was going to see her later that day. Both Karen and Aubrey Livingston testified in detail to the abduction of Finney, the Washingtons, and Edna Washington's children and their subsequent murders in the burned automobile.
While Jackson denied any part in the murders, this trial constituted more than just a swearing match between Jackson, his estranged wife, and the coperpetrator, Livingston. Shirley Jackson (no relation to Karen) saw Jackson at the Washington home on the night of the murder and testified that she observed Edna Washington climbing into the back of Jackson's van. The significance of this testimony by a disinterested witness was not lost on the jurors because during their deliberations they asked that it be reread.
When Jackson was arrested, he had burn marks on his face and hands. Jackson told a policeman that he had received the burns while barbecuing on the previous Sunday night. At the trial he admitted that he had lied and testified that this really occurred two days later. He also admitted having previously lied to a policeman concerning *266 when he had last seen his wife. Some handcuffs were found twenty-five feet from the abandoned car, and a key which was later taken from Jackson's key ring fit these handcuffs. Yellow rope which was used to tie up one of the victims was identical in fiber texture and manufacture to yellow rope found in Jackson's attic. When viewed in its entirety, the evidence unerringly pointed to Jackson's guilt.
Moreover, there is every reason to believe that the jury was already aware that this was not Jackson's first trial. The crimes occurred on February 18, 1981, and this trial commenced on May 5, 1986. One of Jackson's witnesses even testified that he had visited Jackson in the Broward County Jail and pointed out that this was before Jackson had been sent to state prison.
This case is somewhat like People v. Boose, 85 Ill. App.3d 457, 40 Ill.Dec. 760, 406 N.E.2d 963 (App.Ct. 1980), in which the defendant was also on trial for murder. During cross-examination of a defense witness, reference was made to the fact that the witness had talked to the defendant in jail while his case was on appeal. In view of the overwhelming evidence of defendant's guilt, the court held that the fact that the jury may have learned that the defendant had been found guilty in a previous trial constituted no more than harmless error. The court also observed that the jury was "aware that the matter had taken almost seven years to come to trial, a circumstance which may well have inferred [sic] previous legal proceedings." Id. at 461, 40 Ill.Dec. at 762, 406 N.E.2d at 965.
I do not suggest that an erroneous reference to the defendant's prior conviction of the crime for which he is on trial would not, in many instances, require reversal. I only say that on the record in this case, I am convinced that the error was harmless. I would affirm Jackson's conviction.
EHRLICH, C.J., and OVERTON, J., concur.