# Third District Court of Appeal

**State of Florida**

Opinion filed September 16, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1199
Lower Tribunal No. 15-184-K
_____

**State of Florida, Department of Highway Safety, etc.,**
Petitioner,

vs.

**Joseph S. Baird,**
Respondent.


A Writ of Certiorari to the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Stephen D. Hurm, General Counsel, Department of Highway Safety and Motor Vehicles, and Natalia Costea, Assistant General Counsel, for petitioner.

Robertson & Hunter and Dustin S. Hunter (Key West), for respondent.


Before SUAREZ, C.J., and EMAS and FERNANDEZ, JJ.

SUAREZ, C.J.

The Department of Highway Safety and Motor Vehicles ("DHS") petitions

for a writ of certiorari to quash the trial court's reversal of the suspension of

Respondent Joseph S. Baird's driver's license. We grant the petition finding that the trial court, acting in its appellate capacity, applied the wrong law and substituted its judgment for that of the hearing officer. Miami-Dade County v. Omnipoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003), quoting, Haines City Cmty. Dev. v. Heggs, 658 So., 2d 523, 530 (Fla. 1995); Dep't of High. Saf. Motor Veh. v. DeGroot, 971 So. 2d 237 (Fla. 2d DCA 2008).

FACTS

Respondent was arrested for driving under the influence in October 2014 after driving 50 mph in a 30-mph zone. He requested a formal administrative hearing, but elected not to appear at the hearing. Several documents were admitted at the hearing, including the arrest report, a breath alcohol test affidavit, and an affidavit of refusal to submit to a breath, urine or blood test. The refusal affidavit states that Respondent refused to take a breath test at 3:40 a.m. The DUI check sheet reflects refusals at 3:41 a.m. and 3:52 a.m.

Two officers testified at the hearing. One officer testified that during the 20-minute observation period he asked Respondent if he would take a breath test and Respondent declined. In response to questions from Respondent's counsel the officer stated that he did not recall advising Respondent that the breath test was optional, but that it was possible. The officer testified that he asked Respondent to take the test "at least twice" and that Respondent "did say that he understood the

consequences of refusing to provide the breath test and that he did refuse the breath test."

At the close of the hearing, counsel argued that because Respondent was told that the breath test was "optional" it was implied that there was a "safe harbor" in refusing to take the test, so Respondent's refusal to take the test was not voluntary. Respondent also argued that the check sheet and affidavit were inconsistent and it was not clear if the refusal was before or after he was given warnings of the consequences of his refusal. According to the Hearing Officer's Findings of Fact and Conclusions of Law, at the end of the hearing, "Counsel requested Hearing Officer to review video" and "Hearing officer reviewed the video per Counsel's request." The video of the discussion between the officer and Respondent regarding the breath test shows the following exchange:

OFFICER: I am now requesting that you submit to a breath test.

RESPONDENT: Is that an option?

OFFICER: Yes, it is optional, but there are consequences.

The video shows that the officer then read Respondent that portion of his driver's license which notifies all Florida drivers that "Operation of a motor vehicle constitutes consent to any sobriety test required by law." Immediately thereafter the officer read Respondent that portion of the consent form which states "If you fail to submit to the test I have requested of you, your privilege to operate a motor vehicle will be suspended for a period

3

of one (1) year for a first time refusal, of eighteen (18) months if your privilege has been previously suspended as a result of a refusal to submit to a lawful test of your breath, urine or blood." When the officer completed reading the form to Respondent, Respondent refused to take the breath test.

At the end of the 20-minute waiting period Respondent was again asked if he would take the breath test. After Respondent refused to take the breath test a second time, he was read his Miranda rights and no other conversations occurred.

The hearing officer sustained the suspension of Respondent's license and Respondent filed a petition for certiorari to the circuit court. In granting the petition the circuit court found:

> [T]he language used by [the officer] informing [Respondent] that the breath test was optional created a 'safe harbor' of refusal for [Respondent.] … [Respondent] believed the breath test was optional based on the statement of [the officer]. Although [Respondent] was read implied consent prior to declining the breath test, that was insufficient to erase the taint of the misinformation given to [Respondent] by [the officer].

The circuit court found that "[Respondent] believed the breath test was optional based on the statement of [the officer]," but there is no citation to what evidence supported that conclusion. The circuit court also found that there were "critical discrepancies with respect to the time of refusal within the documentary evidence." Finally, the circuit court found that without the evidence of the refusal, there was

4

no competent substantial evidence to uphold the suspension.  This Petition

followed.

ANALYSIS

We agree with DHS that in reaching its conclusions the circuit court applied

the wrong law and improperly reweighed the evidence.  Controlling case law is

clear that the circuit court was not permitted to scour the record for evidence which

contradicted the hearing officer's conclusion.  Dep't of High. Saf. & Motor Veh. v.

Porter, 791 So. 2d 32 (Fla. 2d DCA 2001).  In that case the circuit court reversed a

suspension because the hearing officer had "improperly" found probable cause

based on the "fellow officer rule."  In reversing the circuit court, the Second

District stated:

> Controlling law dictates that when a party is entitled as a
> matter of right to seek a circuit court's review of
> administrative action, the circuit court's inquiry is limited
> to three issues: (1) whether the agency furnished
> procedural due process; (2) whether the agency observed
> the essential requirements of law; and (3) whether the
> agency's findings and judgment are supported by
> competent substantial evidence. … We conclude the
> court failed in the latter regard in several ways. One of
> them derived from the court's focus on whether the
> hearing officer's application of the fellow officer rule was
> supported by his written finding that Deputy Cox had
> related to Deputy Watson the 'circumstances surrounding
> the traffic stop.' In its certiorari review of the suspension
> the circuit court was not called upon to assess whether
> the wording of a particular finding supported the result.
> Rather, as mentioned, the court was required to

> determine whether the hearing officer's findings and judgment were supported by competent substantial evidence. … If the circuit court had observed the correct scope of review, it could not have found the hearing officer's order deficient in this regard. By basing its decision on matters outside the permissible scope of review, the court applied incorrect law.

Id. at 34-35, emphasis added.

Similarly in Department of Highway Safety & Motor Vehicle v. Wiggins, 151 So. 3d 457 (Fla. 1st DCA 2014), rev. granted, Wiggins v. Department of Highway Safety & Motor Vehicle, No. SC14-2195 (Fla. Dec. 17, 2014), a hearing officer issued a suspension order, but the circuit court reversed "after independently reviewing the [officer's car's] video" and holding "that the administrative order was flawed because the video contradicted the officer's testimony and report." The circuit court "conceded" that the officer's testimony coupled with his report supported the factual findings of the hearing officer, but concluded that "neither the testimony of [the officer] nor the arrest and booking report constitute[d] competent substantial evidence on which the hearing officer could rely." Id. at 461.

On appeal, the First District concluded that the circuit court had erred, stating:

> The narrow but important issue presented is whether the circuit court, acting in its appellate capacity, erred by concluding that its independent review and assessment of events on a video of the traffic stop trumped the hearing officer's factual findings, which were based on the

6

arresting officer's testimony and report. We hold that it did and grant the petition for certiorari.

Id. at 457. After finding that Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So. 2d 1270, 1275-76 (Fla. 2001) constituted clearly established law, the First District also concluded that "[t]his clearly established legal principle in Dusseau—that a circuit court applies the 'wrong' or 'incorrect' law when it reweighs or reevaluates conflicting evidence and decides the merits of the underlying dispute anew—was previously well-established. As the supreme court pointed out in Dusseau." Id. at 463. In finding that the circuit court had erred, the court stated:

> As Dusseau explained, a circuit court is only permitted to determine whether an agency's decision was supported by competent substantial evidence. 794 So.2d at 1275 ("the court should review the record to determine simply whether the Commission's decision is supported by competent substantial evidence."). Stated differently, this limited review boils down to a single-focused inquiry:
>
> The sole issue before the court on first-tier certiorari review is whether the agency's decision is lawful. The court's task vis-a-vis the third prong of Vaillant is simple: The court must review the record to assess the evidentiary support for the agency's decision. **Evidence contrary to the agency's decision is outside the scope of the inquiry at this point, for the reviewing court above all cannot reweigh the 'pros and cons' of conflicting evidence**. **While contrary evidence may be relevant to the wisdom of the decision, it is irrelevant to the lawfulness of the decision. As long as the record contains competent substantial evidence to support the agency's decision, the decision is presumed lawful and the court's job is ended.**

7

Id. at 1276 (emphasis added). The emphasized language—as applied to this case—shows how the circuit court went beyond the specific analytical parameters of Dusseau and its progeny, thereby applying the incorrect law.

The circuit court—in reaching its ultimate legal judgment—focused exclusively on the video, which both Wiggins and the court deemed to be 'evidence contrary to the agency's decision.' That was error. **The sole starting (and ending) point is a search of the record for competent substantial evidence supporting the decision. The proper approach is narrow here, focusing on whether the officer's testimony, the arresting/booking report, or the video—or portions thereof—support the hearing officer's factual findings.** (e.s.)  See City of Jacksonville Beach v. Car Spa, Inc., 772 So.2d 630, 631–32 (Fla. 1st DCA 2000) ('[I]t is clear that ... rather than reviewing the entire record to determine whether the Planning Commission's decision was supported by competent substantial evidence, the circuit court considered only portions of the record, and reweighed the evidence, substituting its judgment for that of the Planning Commission as to the relative weight of that evidence.'). The existence of inconsistencies or contradictions in the overall evidentiary record does not negate a hearing officer's findings; an evidentiary record need not have one-sided purity to prevail. Id. Besides that, putting contrary evidence on the judicial scales is 'outside the scope of the inquiry' at the circuit court level and amounts to a pros/cons approach that Dusseau prohibits.

Within its analysis, the trial court tacitly conducted the type of review envisioned by Dusseau because it explicitly said that '[s]tanding alone, the arrest and booking report and the testimony by Deputy Sander would support the findings of the hearing officer.' Its inquiry at that point—as explained in Dusseau—was thereby 'ended.' 794 So.2d at 1276. Whatever misgivings

8

it may have had about possible conflicts between the video and the officer's testimony/report were 'outside the scope of the inquiry' as <u>Dusseau</u> holds. If portions of the report, or portions of the officer's testimony, or portions of the video, or some combination of the three, provided evidentiary support for the hearing officer's findings, judicial labor was at its end.

<u>Id.</u> at 464-465. <u>See also</u>, <u>Broward Cnty. v. G.B.V. Int'l, Ltd</u>., 787 So.2d 838, 845 (Fla. 2001) (In this case, the circuit court reweighed the evidence, which was beyond the scope of its certiorari review."); <u>Dep't High. Saf. & Motor Veh. v. Kurdziel</u>, 908 So. 2d 607 (Fla. 2d DCA 2005) (where the circuit court was reversed for improperly reweighing the evidence where it rejected the hearing officer's conclusion that the evidence showed the driver had been pulled over because the officer suspected the driver was ill, tired or under the influence. In reversing, the appellate court stated: "When a circuit court applies an improper standard of review, 'this is tantamount to departing from the essential requirements of law [.]'"); <u>Dep't of High. Saf. & Motor Veh. v. Swegheimer</u>, 847 So. 2d 545, 546 (Fla. 5th 2003) (where the court found that the circuit court had applied the wrong law when it found that the officer had failed to establish that the events occurred in the jurisdiction "while ignoring the probable cause affidavit which constituted competent substantial evidence of jurisdiction."); and <u>Dep't of High. Saf. & Motor Veh. v. Cochran</u>, 798 So. 2d 761, 763 (Fla. 5th DCA 2001) ("We disagree that [a] possible defect in the affidavit alone is a sound basis to overturn the hearing officer's findings which support the license suspension.").

9

As in the above-cited cases, the circuit court here improperly conducted an independent review of the video tape and reweighed the evidence provided by that video tape. This was error.

The circuit court also cited to Jackson v. State, 832 So. 2d 932 (Fla. 3d DCA 2002)[1] for the proposition that "the inquiry in this case turns on the defendant's state of mind, not the investigator's, and the potential effect on defendant of the words used." However, that case is not applicable because evidence was provided as to the impact on the defendant's state of mind of the misleading statement. In this case, the time lapse between the statement "it is optional" and the reading of the actual consequences was less than 10 seconds and there was nothing offered to support the argument that such a *de minimus* time lag had any impact on Respondent.[2]

In summary, the record before the hearing officer supported his findings of fact and conclusions of law and the circuit court erred when it not only scoured the

---

[1] The circuit court's actual citation is to Jackson v. State, 545 So. 2d 260 (Fla. 1989), but that citation must be a typographical error as the quoted language is from the above-cited case.

[2] On the issue of contradiction in the record, the circuit court relied on Department of Highway Safety & Motor Vehicle v. Trimble, 821 So. 2d 1084, 1086-87 (Fla. 1st DCA 2002), but that case is likewise inapplicable because the only evidence submitted there was documentary evidence that gave "equal support to inconsistent inferences." In this case the hearing officer also had the officer's testimony which explained the existence of two different time entries for refusal to take the breath test.

10

record for contrary evidence, but also reweighed the evidence. Consequently we grant the petition, quash the circuit court order, and remand for further proceedings.