**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37906**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2012 Opinion No. 19** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: April 17, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| VANCE A. WATKINS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

LANSING, Judge

Vance A. Watkins appeals from his conviction for lewd conduct. His previous conviction for the same offense was vacated by the Idaho Supreme Court and the case was remanded for a new trial. During the second trial, a witness mentioned there had been a prior trial and appeal. Watkins asserts that the district court erred by declining to grant a mistrial after this disclosure.

## I.

## BACKGROUND

In 2005, following a jury trial, Watkins was convicted of lewd conduct with a minor under sixteen, Idaho Code § 18-1508. That conviction was reversed and the case remanded for a new trial because important DNA evidence had been presented through inadmissible hearsay testimony. *State v. Watkins*, 148 Idaho 418, 224 P.3d 485 (2009). Prior to the new trial on remand, witnesses were cautioned not to mention that there had been a previous trial and appeal.

1

During Watkins' new trial, the State called a police officer as its second witness. During cross-examination, the following exchange took place:

> DEFENSE COUNSEL: Okay. All right. Well, once again, referring back to an earlier time when you testified about this, do you remember talking about opening bags and then moving two pieces of paper around to find the condom?
>
> THE WITNESS: In my transcript from the--well, can I say that because I was told I can't talk about the prior trial.
>
> THE COURT: With regard to your prior testimony, do you recall making a different testimony than you are today?
>
> THE WITNESS: I don't remember recalling. I read the transcript of the prior trial after the appeals court--so if that's what you're asking.
>
> THE COURT: At this time we need to take up an issue outside the presence of the jury. If you would please take the jury back to the jury room.

After hearing argument from the parties regarding possible measures, including declaration of a mistrial, to remedy the officer's disclosure that there had been a prior trial and appeal, the district court took the issue under advisement and excused the jury for the day. The following morning, the district court declined to grant a mistrial, concluding that a curative instruction would effectively remedy the disclosure. The court stated: "In my view the jury could equally find that a verdict in the first case was unfavorable to the State just as it could find that it was unfavorable to the defendant." The court then instructed the jury: "You have heard testimony that there was a previous trial in this matter. You are not to speculate as to the result of that previous trial." The jury subsequently found Watkins to be guilty.

On appeal, Watkins contends the district court erred in refusing to declare a mistrial. He asserts that the witness's mention of the first trial and appeal amounted to a disclosure of Watkins' prior conviction, and that the disclosure violated his constitutional right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution.

## II.

## ANALYSIS

Motions for a mistrial in criminal cases are governed by Idaho Criminal Rule 29.1, which authorizes such relief "when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." When we review a denial of a motion for a mistrial, the question on appeal is not whether the trial court reasonably exercised its discretion in light of circumstances existing when the mistrial motion was made. Instead, we examine whether the

2

event that precipitated the motion constituted reversible error when viewed in the context of the full record. *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003); *State v. Norton*, 151 Idaho 176, 192, 254 P.3d 77, 93 (Ct. App. 2011); *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993); *State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983). That is, the query is whether there has been reversible error. Our focus is upon the ultimate impact on the trial of the incident that triggered the mistrial motion. The trial court's refusal to declare a mistrial will be disturbed only if that event, viewed retrospectively, amounted to reversible error. *Urquhart*, 105 Idaho at 95, 665 P.3d at 1105. An error is harmless, not necessitating reversal, if the reviewing court is able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 24 (1967); *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010).

A.      **The Disclosures Did Not *Ipso Facto* Necessitate a Mistrial**

Watkins argues that the disclosure of a prior trial and appeal is tantamount to telling the jury that Watkins had been found guilty by a previous jury. Idaho appellate courts have not previously considered the impact of such a disclosure. As Watkins points out, however, decisions from other jurisdictions have nearly universally concluded that the disclosure of a prior conviction necessitated a mistrial because the disclosure was severely prejudicial to the defendant. Some courts have held that such disclosure is cause for a mistrial *ipso facto*, while others have reached the conclusion after conducting a harmless error analysis. *See United States v. Williams*, 568 F.2d 464, 470-71 (5th Cir. 1978); *Salas v. People*, 493 P.2d 1356, 1357 (Colo. 1972); *Bailey v. State*, 521 A.2d 1069, 1076 (Del. 1987); *Jackson v. State*, 545 So. 2d 260, 263 (Fla. 1989); *State v. Lee*, 346 So. 2d 682, 684 (La. 1977); *Coffey v. State*, 642 A.2d 276, 285 (Md. Ct. Spec. App. 1994).

Here, we need not decide whether the disclosure of a prior *conviction* for the same offense would be cause for an automatic declaration of a mistrial because the police officer mentioned only a "prior trial" and "the appeals court," without revealing the result of Watkins' first trial or saying which party appealed. We are not persuaded that this is equivalent to the disclosure that a previous jury had found him guilty. Other courts addressing similar disclosures of a previous trial or appeal have concluded that the disclosure resulted in little or no prejudice. In *People v. Boose*, 406 N.E.2d 963, 964-66 (Ill. Ct. App. 1980), the Appellate Court of Illinois concluded that a witness's "nebulous and ambiguous" references to the defendant's incarceration

3

and participation in an appeal were harmless under the *Chapman* standard.  The Delaware Supreme Court held that no mistrial was necessary after a witness mentioned a previous trial because "the jury could *at most* only speculate as to the outcome of [defendant]'s previous trial" and "[s]uch speculation, if indeed it even occurred, would not necessarily have led the jury to believe that the trial ended in [defendant]'s conviction."  *MacDonald v. State*, 816 A.2d 750, 756 (Del. 2003).  Other courts have reached similar conclusions.  *Brooks v. State*, 918 So. 2d 181, 208 (Fla. 2005) (holding the court did not err in refusing to grant a mistrial when the State referred to the previous trial without disclosing the result), *partially overruled on other grounds by State v. Sturdivant*, ___ So. 3d ___ (Fla. Feb. 23, 2012); *Hood v. State*, 537 S.E.2d 788, 790 (Ga. Ct. App. 2000) ("The equally rational inference is a mistrial due to the inability to achieve a unanimous verdict."); *Carroll v. State*, 248 S.E.2d 702, 705 (Ga. Ct. App. 1978) ("[E]ven if the use of the transcript indicated to the jurors that there had been a previous trial, it could just as easily have led them to the conclusion that the previous trial had resulted in a mistrial as that it had resulted in a conviction."); *People v. Jones*, 528 N.E.2d 648, 658 (Ill. 1988) (holding jurors may have understood a witness's reference to "the last trial" to be a reference to an "earlier hearing," and that the brief reference was not prejudicial when the result was not disclosed); *Brown v. Kentucky*, 313 S.W.3d 577, 607 (Ky. 2010) ("Absent [an explicit disclosure that another jury found the defendant guilty], the fact that the jury may have been aware that Brown was being retried no more infringed upon his right to be presumed innocent than does the jury's awareness that the defendant was arrested, indicted, and put on trial."); *State v. Williams*, 445 So. 2d 1171, 1177 (La. 1984) (holding no reversible error occurred when "references to a prior trial did not identify the defendant in the prior trial, and did not refer to a conviction"); *State v. Bridges*, 854 A.2d 855, 858 (Me. 2004) (holding "a curative instruction was adequate to protect against improper consideration of the reference to the first trial by the jury" when the result was not disclosed); *State v. Endres*, 741 S.W.2d 788, 791 (Mo. Ct. App. 1987) (holding jury may not have "discern[ed] the difference between a prior hearing and a prior trial" and in any event the result was not disclosed); *State v. Tate*, 288 A.2d 494, 497 (R.I. 1972) (holding the defendant was not prejudiced by reference to a previous trial absent a reference to the result); *Harward v. Virginia*, 364 S.E.2d 511, 516 (Va. Ct. App. 1988) (holding a reference to a previous trial does not "warrant any inference that [defendant] had been previously convicted").  We agree that if jury speculation about the outcome of the previous trial occurred here despite the curative

4

instruction against such speculation, it would not necessarily have led the jury to believe that Watkins had been convicted.

We thus conclude that, although the disclosure here was a serious error, this is not a situation that calls for a mistrial *ipso facto*. Instead, we will undertake a harmless error analysis, as is the usual procedure where a motion for a mistrial has been denied.

**B.      The Curative Jury Instruction Is Not Dispositive**

The State contends that our harmless error review can be truncated because we must presume that the jury followed the district court's curative instruction to not speculate about the outcome of the first trial. The State maintains that this presumption ends our inquiry. For this assertion, the State relies on a footnote in *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987), stating that when a curative instruction is given, the defendant may overcome the presumption that the jury followed the instruction only by showing that there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.

We quoted and applied this *Miller* standard in *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004), and *State v. Grantham*, 146 Idaho 490, 498, 198 P.3d 128, 136 (Ct. App. 2008). In *Norton*, however, we explained that the reference to the *Miller* standard in *Grantham* "did not attempt to change the standard [of review]; rather, it makes clear that where a court gives a curative instruction, the appellate court may consider that factor in determining whether the alleged error is reversible." *Norton*, 151 Idaho at 193, 254 P.3d at 94. Thus, *Norton* clarified that *Hill* and *Grantham* did not supplant our well-established standard for reviewing the denial of motion for mistrial in which we evaluate whether the error was harmless or reversible in light of the entire trial.[1]

In many situations a curative instruction can be an effective remedy, and such an instruction has sometimes been the determinative factor in the disposition of an appellant's claims of error. *See State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011); *State v. Urie*, 92 Idaho 71, 74, 437 P.2d 24, 27 (1968); *State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997). Nevertheless, application of the presumption does not always end the inquiry.

---

[1]      When the district court relied on the *Miller* standard as articulated in *Grantham*, it did not have the benefit of this Court's decision in *Norton*, which was issued after Watkins' trial.

*See State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978); *State v. McMurry*, 143 Idaho 312, 316, 143 P.3d 400, 404 (Ct. App. 2006); *Shepherd*, 124 Idaho at 56-58, 855 P.2d at 893-95 (Ct. App. 1993). In *State v. Simonson*, 112 Idaho 451, 453-54, 732 P.2d 689, 691-92 (Ct. App. 1987), we held that a curative instruction was insufficient to remedy the disclosure that the defendant had previously pleaded guilty and then withdrawn that plea. Thus, although we normally presume that a jury will follow an instruction to disregard inadmissible evidence, this presumption cannot shield all errors from appellate review, regardless of the severity of the error or the forcefulness and effectiveness of the instruction. As the United States Supreme Court has recognized:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

*Bruton v. United States*, 391 U.S. 123, 135 (1968). We have similarly noted that where the evidence presents a close question for the jury, "a corrective instruction, even one that is forceful, might be insufficient to cure the prejudicial effect" of very damaging evidence. *State v. Keyes*, 150 Idaho 543, 545, 248 P.3d 1278, 1280 (Ct. App. 2011).

Thus, we have rejected both Watkins' argument for a rule that the disclosure of prior proceedings in this case is so egregious that a mistrial is required *ipso facto*, and the State's argument that the presumption of compliance with a curative jury instruction is dispositive and ends our inquiry. Both are positions that essentially ask us to decide the case without considering the impact of the error within the context of the full trial, as required by our standard of review. We believe the proper balance is struck by engaging in a harmless error inquiry.

### C. Harmless Error Analysis

In conducting a harmless error analysis here, we consider the strength of the evidence against Watkins, the significance of the improperly disclosed information, and the district court's curative instruction. *See Keyes*, 150 Idaho at 545, 248 P.3d at 1280; *Simonson*, 112 Idaho at 457, 732 P.2d at 695. While the inadvertent disclosure to the jury that there had been a previous trial and appeal in this case was a serious error, we bear in mind that the jury was not explicitly informed that Watkins' first trial resulted in a conviction.

Watkins testified at trial and denied the victim's allegations. He suggested that the victim may have concocted the story after he made her clean the house or that her mother may have told

6

her to fabricate the story. However, the State presented overwhelming evidence of Watkins' guilt. The victim described specific instances of manual-genital, genital-genital, oral-genital, and genital-anal conduct in explicit detail. She testified that the touching began when she was four years old, and continued until she disclosed the abuse to a teacher two years later. She explained that the defendant used lubricant during vaginal intercourse, and that on at least one occasion, the defendant used a condom. She said that Watkins kept the lubricant and condoms in a drawer by his bed. During the execution of a search warrant, the police located lubricants and condoms in a nightstand next to Watkins' bed, and a used condom in the kitchen trash. Analysis of the condom revealed the presence of semen matching Watkins' DNA inside the condom, and on the outside of the condom a mixture of DNA from two individuals that matched Watkins' and the victim's DNA profiles. The police also seized several pairs of the victim's underwear. On one pair of underwear, there was semen that matched Watkins' DNA.

Watkins' defense, which centered on a theory that the DNA results were unreliable due to cross-contamination, had little support in plausible evidence. In Watkins' testimony he sought to explain how the condom found by police had the victim's DNA on it. Watkins said that he found an opened condom under the bed and decided to use it while masturbating "so it didn't go to waste." He said that when he removed it, it slipped from his hands onto a pile of dirty clothes, possibly thereby picking up some of the victim's DNA. Watkins argued that the condom also could have come into contact with some other item in the trash containing the victim's DNA. During cross-examination, the officer who collected the evidence stated that he changed his gloves before and after handling the condom and at various other times during the search, but he acknowledged that he did not change his gloves before and after handling every other piece of evidence. He admitted that seven pairs of underwear collected from the victim's room were packaged together for testing. Watkins' theory of cross-contamination was countered by expert testimony that cross-contamination of DNA typically results in "broken down partial profiles," and that the two DNA profiles extracted from the condom were "full profiles."

Considering the overwhelming evidence of guilt presented at trial, including DNA evidence, and the trial court's curative instruction, we are convinced beyond a reasonable doubt that the police officer's improper disclosures of a prior trial and appeal were harmless in this case.

## III.

## CONCLUSION

The denial of Watkins' motion for a mistrial was not reversible error because the disclosure of a previous trial and appeal was, in this case, harmless. Therefore, the judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**