**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39136**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2013 Opinion No. 3** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: January 16, 2013** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| ROBERT JOSEPH FRAUENBERGER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Dane H. Watkins, Jr., District Judge.

Judgment of conviction and sentences for three counts of lewd conduct with a minor under the age of sixteen and one count of delivery of marijuana to a person under the age of eighteen, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

LANSING, Judge

A jury found Robert Joseph Frauenberger guilty of three counts of lewd conduct with a minor under sixteen and one count of delivery of marijuana to a person under eighteen years of age. Frauenberger appeals from the judgment of conviction. He asserts a lack of district court jurisdiction, a variance between the charging information and the jury instructions, and insufficient evidence to support the verdict, all founded upon use of a pseudonym in place of the victim's real name in the charging document. He also contends that the district court erred in denying his motion for a mistrial based upon two instances of prosecutorial misconduct in the elicitation of evidence and that two additional instances of prosecutorial misconduct during closing argument warrant reversal of his convictions. Lastly, Frauenberger contends that his sentences are excessive. We affirm.

1

# I.

## BACKGROUND

Frauenberger was charged with three counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, and two counts of distribution of marijuana to a person under eighteen years of age, I.C. §§ 37-2732(a)(1)(B); 37-2737, based upon allegations of sexual contact with a thirteen-year-old girl and delivery of marijuana to the same victim. At trial, the district court granted a judgment of acquittal on one of the distribution of marijuana charges for lack of evidence. The jury returned guilty verdicts on the remaining four counts. The district court imposed concurrent unified ten-year sentences with two years fixed for lewd conduct and a concurrent unified four-year sentence with one year fixed for distribution of marijuana. Frauenberger appeals.

# II.

## ANALYSIS

### A.    Issues Related to the Use of a Pseudonym in Place of the Victim's True Name in the Charging Document

The prosecutor's complaint, information, amended information, second amended information, and third amended information all allege that the victim was thirteen-year-old "Bonnie Noe." The jury instructions, however, used the victim's true name, for which we will substitute the initials, B.H. On appeal, Frauenberger asserts for the first time that his convictions must be overturned because this discrepancy caused the district court to lack jurisdiction over the charges, caused a material variance between the charging document and the jury instructions to his prejudice, and rendered the trial evidence insufficient to sustain the guilty verdicts.

All of Frauenberger's claims of error are predicated on the position that the information charged a crime against someone other than B.H. We find this position to be disingenuous, for it was clear to the defendant and to all other participants from the outset of the proceedings that the name "Bonnie Noe" was just a pseudonym for B.H., used to protect B.H.'s privacy.[1] B.H. testified under her true name at a preliminary hearing at which Frauenberger was personally

---

[1]    We are aware of no Idaho criminal rule expressly authorizing or prohibiting the use of a pseudonym in criminal charging documents. However, Idaho Court Administrative Rule 32(i) authorizes a procedure to protect confidential information from disclosure in documents filed with a court. It allows for sealing or redacting records in limited circumstances.

present. At that time, neither Frauenberger nor his attorney expressed any surprise or doubt about the victim's identity, nor did they at any subsequent proceedings. During jury voir dire, the district court told the potential jurors that the alleged victim in the matter was B.H., and asked if any of them knew her. Both the prosecutor and defense counsel used the victim's real name in their opening statements. At trial, B.H. again testified under her true name. When she testified, the prosecutor made no attempt to establish for the jury that B.H. and Bonnie Noe were the same person, but on cross-examination, defense counsel asked B.H. whether she was "Bonnie Noe" and she answered, "I guess, yeah." Defense counsel impeached B.H. using her testimony from the preliminary hearing. Although use of a pseudonym in the charging document without clarification at trial could risk jury confusion in a less clear case, it did not, as Frauenberger's arguments assume, amount to charging a crime against a *different* victim where all parties knew full well that the name was a pseudonym for the victim and not an actual third person. With this in mind, we will address each of Frauenberger's associated claims of error.

### 1. Subject matter jurisdiction

Frauenberger's first argument is that the charging information did not confer on the district court subject matter jurisdiction over a prosecution for crimes victimizing B.H. Frauenberger did not challenge jurisdiction below, but Idaho Criminal Rule 12(b)(2) allows objections regarding defects in the charging document to be raised at any time through the course of proceedings, including for the first time on appeal, if the defect is jurisdictional or results in a failure to charge an offense. *State v. Jones*, 140 Idaho 755, 758, 101 P.3d 699, 702 (2004).

Because the charging document is the instrument that confers subject matter jurisdiction on a court, whether a court has subject matter jurisdiction depends upon whether the charging document is legally sufficient. *State v. Severson*, 147 Idaho 694, 708, 215 P.3d 414, 428 (2009). An indictment or an information confers jurisdiction if it alleges that the defendant committed a criminal offense within the state of Idaho. *Id.*; *Jones*, 140 Idaho at 757-58, 101 P.3d at 701-02. Whether a charging document conforms to legal requirements and whether a court has jurisdiction are questions over which we exercise free review. *Id.*

Frauenberger acknowledges that the charging information here was not facially defective, for it plainly alleged the commission of specified crimes within this state. Frauenberger argues, however, that "the information filed conferred jurisdiction only for the crimes charged involving Bonnie Noe," but not for any crimes involving B.H. as the victim. This argument is based

3

entirely on the false notion that the name, "Bonnie Noe," was something other than a pseudonym for B.H.; i.e., that the information alleged a crime against some victim other than B.H. Because, as we have explained above, that assertion is entirely disproven by the record, Frauenberger's jurisdictional challenge is without merit.

### 2. Variance

We next address Frauenberger's argument that there was a variance between the charging document and the jury instructions. Because Frauenberger did not preserve his variance claim by objection below, we review for fundamental error. A defendant asserting fundamental error bears the burden to persuade the appellate court that the alleged error: (1) violated one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010); *State v. Thumm*, 153 Idaho 533, 542, 285 P.3d 348, 357 (Ct. App. 2012).

In *State v. Brazil*, 136 Idaho 327, 33 P.3d 218 (Ct. App. 2001), we described the circumstances in which a variance will require reversal of a conviction:

> A determination of whether a variance is fatal depends on whether the basic functions of the pleading requirement have been met. *State v. Windsor*, 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985). A charging instrument meets the basic functions of the pleading requirement if it fairly informs the defendant of the charges against which he or she must defend and enables him or her to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey*, 444 U.S. 394, 395, 100 S. Ct. 624, 626-27, 62 L. Ed. 2d 575, 581-82 (1980). Therefore, a variance between a charging document and a jury instruction requires reversal only when it deprives the defendant of his or her right to fair notice or leaves him or her open to the risk of double jeopardy. *Windsor*, 110 Idaho at 417-18, 716 P.2d at 1189-90; [*State v. Sherrod*, 131 Idaho 56, 59, 951 P.2d 1283, 1286 (Ct. App. 1998)].

*Brazil*, 136 Idaho at 330, 33 P.3d at 221. "A review of whether the defendant was deprived of his or her right to fair notice requires the court to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense." *Id.*

Frauenberger disavows any claim of lack of notice or surprise caused by the alleged variance, contending instead that the variance is fatal because it leaves him open to the risk of future double jeopardy. He surmises that "although the jury found him guilty of committing

crimes associated with B.H. the information charges him with crimes associated with Bonnie Noe and the State may potentially recharge him in a case listing the victim as B.H., subjecting him to punishment for crimes for which he has already been punished."

We find Frauenberger's argument groundless because the risk he posits simply does not exist under modern practices of creating and maintaining records of judicial proceedings, including verbatim records of all components of a criminal trial. This point was made by our Supreme Court in *State v. Smith*, 102 Idaho 108, 110, 626 P.2d 206, 208 (1981), in the context of an appellate challenge to the sufficiency of an information. The Court there addressed an assertion that because the information was nonspecific as to the facts of the alleged crime, it left the defendants at risk of being twice prosecuted for the same offenses. The Idaho Supreme Court explained the fallacy of that contention as follows: "Such double jeopardy concerns are groundless. Even if the information, taken alone, is not specific enough to itself foreclose a subsequent prosecution for the same crime, the appellants have available to them as a bar to such prosecution not only the information, but also the entire record of their trial." *Id.* The Court further observed that if the State were to attempt a second prosecution, "[I]t must be remembered the district court is a court of record and those records . . . amply illustrate [the facts of the alleged crime]. Such documentation on the record precludes a second prosecution for the same offense." *Id.* (quoting *State v. Gumm*, 99 Idaho 549, 554, 585 P.2d 959, 964 (1978) (Bistline, J. and McFadden, J. concurring specially)). Similarly, in *State v. Windsor*, 110 Idaho 410, 418 n.1, 716 P.2d 1182, 1190 n.1 (1985), the Supreme Court observed, "[c]ommentators have argued that the double jeopardy element is no longer as vital a function of the pleading document as it once was since now transcripts of the trial itself are available and more readily relied on to establish what was before the court and jury and ultimately resolved by them, as a bar to future prosecutions." *See also State v. Jones*, 140 Idaho 41, 47, 89 P.3d 881, 887 (Ct. App. 2003); *State v. Coleman*, 128 Idaho 466, 471, 915 P.2d 28, 33 (Ct. App. 1996). This same observation holds true for claims like Frauenberger's, that a variance between the charging document and the jury instructions can somehow leave the defendant open to a double jeopardy risk. If Frauenberger were ever recharged for the same conduct in a case identifying the victim as B.H., he could rely on the record of this case to establish a double jeopardy defense. Therefore, Frauenberger has not shown a clear constitutional error on his unpreserved variance claim.

### 3. Sufficiency of the evidence

Finally, Frauenberger asserts that the evidence was insufficient to convict him of the crime charged in the information. Evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Severson*, 147 Idaho at 712, 215 P.3d at 432. Frauenberger argues that "[t]here was no evidence, much less substantial and competent evidence, presented that proved, beyond a reasonable doubt, that B.H. was Bonnie Noe or that Mr. Frauenberger had any sexual contact or provided marijuana to Bonnie Noe." Again, Frauenberger's argument collapses with the simple recognition that "Bonnie Noe" was merely a pseudonym for B.H., and that this was known to all participants in the trial.

## B. Mistrial

On two occasions at trial, Frauenberger objected to testimony elicited by the prosecutor. The district court sustained the objections, struck the answers, and instructed the jury to disregard them. Despite the court's rulings, Frauenberger later moved for a mistrial on the ground of prosecutorial misconduct but the district court denied the motion. Frauenberger asserts error in this ruling.

When we review a denial of a motion for a mistrial, the question on appeal is not whether the trial court reasonably exercised its discretion in light of circumstances existing when the mistrial motion was made. Instead, we examine whether the event that precipitated the motion constituted reversible error when viewed in the context of the full record. *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003); *State v. Watkins*, 152 Idaho 764, 765-66, 274 P.3d 1279, 1280-81 (Ct. App. 2012); *State v. Norton*, 151 Idaho 176, 192, 254 P.3d 77, 93 (Ct. App. 2011); *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993); *State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). Our focus is upon the ultimate impact on the trial of the incident that triggered the mistrial motion. The trial court's refusal to declare a mistrial will be disturbed only if that event, viewed retrospectively, amounted to reversible error. *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105. An error is harmless, not necessitating reversal, if the reviewing court is able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Perry*, 150 Idaho at 227, 245 P.3d at 979.

Frauenberger's first claim of prosecutorial misconduct asserts that the prosecutor impermissibly elicited testimony from a police investigator that vouched for B.H.'s credibility. A question calling for the opinion of one witness as to the truthfulness of another witness's testimony is generally inadmissible because it invades the province of the jury and does not "assist the trier of fact" as required by Idaho Rule of Evidence 702, nor does it provide information "helpful . . . to the determination of a fact in issue" as required by I.R.E. 701. *Perry*, 150 Idaho at 229, 245 P.3d at 981; *State v. Herrera*, 152 Idaho 24, 33-34, 266 P.3d 499, 508-09 (Ct. App. 2011); *State v. Jackson*, 151 Idaho 376, 380-81, 256 P.3d 784, 788-89 (Ct. App. 2011).

We conclude that the prosecutor did not elicit vouching testimony from the investigator. It is necessary to begin by recounting testimony elicited from the victim by the defense before the investigator testified. On cross-examination, Frauenberger questioned B.H. about statements made by the investigator during his pretrial interview of B.H., as disclosed by a transcript of the interview:

> [DEFENSE COUNSEL]  Okay.  And do you remember the detective being concerned with you changing your story?
> [B.H.]  What do you mean?
> [DEFENSE COUNSEL]  Do you remember him asking you about that?
> [B.H.]  Yes.
> [DEFENSE COUNSEL]  Okay.  So even the detective was concerned about trying to pin you down on what really happened and what really didn't happen?
> . . . .
> [DEFENSE COUNSEL]  Do you remember the detective saying this to you: *"I'm just shaking my head, because you tell me something and then you keep adding to it.  Are you making any of this up?"*  Do you remember the detective asking you that?
> [B.H.]  Yes, I do.
> [DEFENSE COUNSEL]  And because he's been at this over 20 years, and he was having a hard time with you, wasn't he?
> [B.H.]  Yes.

Thus, the defense elicited evidence suggesting that the detective doubted B.H.'s veracity.

When the investigator was later called to testify, the prosecutor sought to rebut that implication that the investigator did not believe B.H.'s story:

> [PROSECUTOR]:  [W]ere you here when defense counsel asked [B.H.] about a portion of your interview where you shook your head because, in your words, as you are talking to [B.H.]:

7

You keep--you tell me something and then you keep adding to it. Are you making any of this up?

Do you remember that portion of his questioning of [B.H.]?

[INVESTIGATOR]: Yes.

[PROSECUTOR]: Tell me what was going on in the interview when you were saying that?

[INVESTIGATOR]: That was a lighthearted moment in the interview for sure. I was actually chuckling at her when she said that. Things were pretty relaxed at that point. I felt like we had a very good rapport going on. I felt like she was talking, opening up quite a bit. But as anything else, in conducting one of those interviews, I, you know, I want to remind people that what they tell me is always open to question from me. I want to make sure that the information I am getting is factual and truthful, and I wanted to just portray to her that I wanted to assure her that I was there to seek the truth. And I wanted to make sure that's what she was giving me.

After questioning the detective about difficulties encountered when interviewing children, the following exchange occurred:

[PROSECUTOR]: So considering that information that you've just given the jury, based on your experience, and the statement that you made to [B.H.] where you said, I'm just shaking my head, because you keep--you tell me something then you keep adding to it, how can--how similar to the general way of answering questions, in your experience, was [B.H.'s] interview?

[INVESTIGATOR] I was just wanting to--I guess I was wanting to make sure we weren't getting into a state where we were too comfortable with each other, and I wanted to communicate to [B.H.] that I wanted to ensure that she was telling me the truth. And I felt that we were at a very comfortable point in the interview where she was becoming very comfortable in talking to me. *I didn't believe, at that point, that she was lying necessarily.*

(emphasis added). At that point, the defense objected, and the district court sustained the objection, struck the final sentence of the answer, and admonished the jury not to consider the witness's belief as to whether the victim was telling the truth or not. Frauenberger later moved for a mistrial, asserting that eliciting this statement was misconduct amounting to reversible error.[2]

---

[2] The prosecutor did not actually elicit the challenged testimony as the detective's statement was gratuitously offered. Under Idaho law and in the instant circumstance, however, this makes no difference because "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that testimony will be imputed to the State for the purposes of determining prosecutorial misconduct." *State v. Ellington*, 151 Idaho 53, 61, 253 P.3d 727, 735 (2011).

Although the district court denied the motion based upon the ameliorating effect of its curative instruction admonishing the jury to disregard the detective's statement, we affirm for a different reason. Regardless of the district court's ruling, Frauenberger bears the initial appellate burden to show that prosecutorial misconduct occurred. *State v. Ellington*, 151 Idaho 53, 59, 253 P.3d 727, 733 (2011); *Perry*, 150 Idaho at 227-28, 245 P.3d at 979-80. We conclude that he has failed to sustain that burden because by saying "I didn't believe, at that point, that [the victim] was lying necessarily," the investigator chose his words carefully and did not state or imply that he believed, at the time of the interview or at the time of trial, that the victim was telling the truth. The investigator was, instead, responding to and rebutting the defense's prior implication that because he had shook his head and questioned the victim as to whether she was being forthcoming during the interview, he *did not* believe the victim. The full context of the trial testimony makes this rebuttal purpose clear, and the distinction is dispositive. We conclude that the detective's statement was not impermissible vouching and that no prosecutorial misconduct occurred.

Frauenberger next contends that the prosecutor committed misconduct warranting a mistrial by eliciting inadmissible evidence of other bad acts by Frauenberger. The prosecutor asked the investigator, "Did [Frauenberger] indicate to you whether or not he had ever been placed on probation for having been possessing marijuana?" The investigator answered "Yes, he did." The defense objected, and the district court sustained the objection. The jury was then excused and the defense moved for a mistrial, positing that this line of inquiry constituted prosecutorial misconduct amounting to reversible error. The prosecutor acknowledged that the question was improper and apologized for asking it, but argued that a curative instruction to the jury would correct the problem and that a mistrial was unwarranted. The district court denied the motion, but at the jury's return struck the prosecutor's question from the record and admonished the jury not to consider it. Frauenberger contends that the district court's action was insufficient to cure the error and that a mistrial should have been declared.

The testimony elicited by the prosecutor did not literally state that Frauenberger had been on probation for possessing marijuana. A follow-up question would have been necessary to determine exactly what Frauenberger said on that subject. However, this situation is analogous to that where a prosecutor asks a question that conveys what the answer would be even if an answer is prevented by a timely objection from defense counsel. Idaho courts have recognized

9

that prosecutorial misconduct may occur where the answer is inadmissible and excluded, but the jury can infer what the answer would have been simply from the content of the question. *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007); *State v. Erickson*, 148 Idaho 679, 684, 227 P.3d 933, 938 (Ct. App. 2010). Here, the prosecutor's leading question itself told the jury that the defendant had previously been convicted of the crime of possession of marijuana. It was undisputed both in the trial court and on appeal that this information was inadmissible.[3]

Although we conclude that the prosecutor's question conveyed inadmissible information to the jury, we also conclude that the prosecutor's error was harmless. First, the district court sustained the defense objection and admonished the jury not to consider the prosecutor's question. The court also followed up with a written instruction directing the jury that "if I tell you not to consider a particular statement or exhibit you should put it out of your mind, and not refer to it in your later deliberations." Absent compelling circumstances dictating the opposite conclusion, a curative instruction is normally an effective remedy when a jury is wrongly exposed to inadmissible evidence. *Watkins*, 152 Idaho at 767-69, 274 P.3d at 1282-84. Moreover, the investigator had already previously testified, without defense objection, that Frauenberger had admitted to smoking marijuana since he was fifteen years old. Thus, the challenged testimony here adds little potential prejudicial impact to unchallenged evidence that was already before the jury. Considering this factor, and being of the view that the error here was not so egregious so as to overcome the presumption that the jury disregarded the question as instructed, we are convinced beyond a reasonable doubt that the disclosure of the defendant's probationary status for marijuana possession was harmless in this case.

## C.     Prosecutorial Misconduct at Closing Argument

Frauenberger next asserts that the prosecutor engaged in misconduct during closing argument by interjecting her personal opinion that B.H. was a credible witness and by making statements appealing to the passions and prejudices of the jury and aimed at engendering sympathy for the victim. Because Frauenberger did not object at trial to the prosecutor's statements, he must establish fundamental error. As noted above, it is therefore the defendant's

---

[3]     Although both parties in the trial court agreed that the information was inadmissible in Frauenberger's trial, neither attorney nor the trial court identified the evidentiary rule or rules that were violated. We surmise that the information was recognized to be inadmissible under terms of I.R.E. 402, 403, and/or 404(b).

burden to persuade the appellate court that the alleged error: (1) violated one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978; *Thumm*, 153 Idaho at 542, 285 P.3d at 357.

Attorneys have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). "Considerable latitude, however, has its limits, both in matters expressly stated and those implied." *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). *Perry* states that "[w]here a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence, this impacts a defendant's Fourteenth Amendment right to a fair trial," and hence is reviewable as fundamental error. *Perry*, 150 Idaho at 227, 245 P.3d at 979.

In this case, the prosecutor recounted B.H.'s testimony where she admitted to sneaking out of her home, performing poorly in school, smoking cigarettes and smoking pot. The prosecutor then said:

> [B.H.] told you about these behaviors, and she was honest with you. It's the State's position that she has no impetus to lie, if she's willing to tell you what a tough kid she was.

Frauenberger complains that these statements violated the prohibition against attorneys interjecting at trial their personal opinions and beliefs about the credibility of a witness, *see Phillips*, 144 Idaho at 86, 156 P.3d at 587, and thereby infringed his constitutional right to due process.

We disagree. Prosecutors are entitled to ask jurors to draw inferences from the trial evidence, including inferences about a witness's credibility. *State v. Felder*, 150 Idaho 269, 272-73, 245 P.3d 1021, 1024-25 (Ct. App. 2010); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995). That is what the prosecutor did here. Frauenberger has not shown any error, much less fundamental error, in this component of the prosecutor's closing argument.

11

Frauenberger next complains of the following statements made by the prosecutor:

. . . [B.H.] was pretty vulnerable to someone who wanted to get his own way with her. She didn't have anybody really looking out for her.

. . . .

The defendant was in a really good position to be able to prey on someone who was wandering away from the herd, a really good position. Because let's look at it. How does a wolf decide on its prey? It looks for someone who's weak. They could be old, could be sick, could be really young and not have the physical strength to resist it. Looks for somebody who's wandering away from the herd, ignoring the safety in numbers that comes with that, sneaking out, looking for greener grass someplace else or maybe entertainment or diversion if you're a 13-year-old girl without anybody watching out for you. Someone who's unaware of the danger and unaware of what can happen when you sneak out in the middle of the night with some boy, looking for maybe somebody who doesn't care about the danger. So those conditions make that particular prey an easy target. Here the prey was [B.H.]. What made her an easy target? Well, as I said, most of the evidence that was heard from her, she was 13 years old in 8th grade. Talked about her family situation. . . .

[B.H.] didn't have any guidance of an adult. And her testimony here, as you maybe saw, it wasn't easy for her. She didn't appreciate that danger. She was really nervous. She was so nervous that she peeled the skin off her little finger while she was testifying Tuesday.

. . . .

. . . find the defendant guilty, because he is a predator. He preyed on someone who was vulnerable and weak, and don't let that happen in our city, because [B.H.] doesn't have anything except the law that says people under 16 don't have the capacity to consent. That's what she has to protect her.

This commentary, Frauenberger urges, was an impermissible attempt to obtain a guilty verdict by argument aimed at engendering sympathy for the victim, *see State v. Troutman*, 148 Idaho 904, 910, 231 P.3d 549, 555 (Ct. App. 2010), and through an appeal to the emotion, passion, or prejudice of the jury. *See Ellington*, 151 Idaho at 62, 253 P.3d at 736; *Phillips*, 144 Idaho at 87, 156 P.3d at 588.

We are unpersuaded that these statements entitle Frauenberger to relief for fundamental error. While the statements might be viewed as straying somewhat beyond comments on the evidence and seeking to invoke sympathy or to arouse emotion, they were not inflammatory or egregious. We do not find that the arguments were of such moment that there is a reasonable possibility that they altered the outcome of the trial. Accordingly, no fundamental error is shown.

12

**D.     Sentence Review**

Lastly, Frauenberger asserts that his concurrent sentences of ten years with two years determinate for lewd conduct and four years with one year determinate for distribution of marijuana are excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007); *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where, as here, a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Stevens*, 146 Idaho 139, 148, 191 P.3d 217, 226 (2008); *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Dalrymple*, 144 Idaho 628, 636, 167 P.3d 765, 773 (2007); *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

Frauenberger asserts that the district court abused its discretion by failing to adequately consider various factors, including that he was only eighteen years old at the time of his offenses, that these are his first felony convictions, that he desires to participate in substance abuse treatment, and that he has support from friends and family. Having reviewed the record, we are satisfied that the district court adequately considered the mitigating evidence that Frauenberger presented. Against this evidence, the district court considered the severity of the offenses (lewd conduct carries a potential fixed life sentence) and evidence of Frauenberger's history of criminal conduct. As a juvenile, Frauenberger had been adjudicated for numerous offenses, including failure to give immediate notice of an accident, inattentive driving, providing false information to an officer, and five separate petit thefts. As an adult, he had prior convictions for resisting or obstructing an officer, possession of a controlled substance, and discharge of firearms. The district court determined that lesser sentences would fail to adequately punish or deter and would depreciate the serious nature of Frauenberger's offenses. This record does not demonstrate an abuse of the district court's sentencing discretion.

## III.

## CONCLUSION

Frauenberger's claims of lack of subject matter jurisdiction, variance, and insufficient evidence are without merit because they disregard the fact, known to all participants in the proceedings, that the victim's name used in the charging document was merely a pseudonym for the actual victim. The district court did not err in denying the defendant's motion for a new trial, and Frauenberger has not shown prosecutorial misconduct amounting to fundamental error. We also conclude that Frauenberger's sentences are not excessive. Therefore, the judgment of conviction and sentences are affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**