**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42883**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 458** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 31, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ANTONIO CUELLAR GONZALEZ; aka** | ) | **THIS IS AN UNPUBLISHED** |
| **ANTONIO GONZALES CUELLA; aka** | ) | **OPINION AND SHALL NOT** |
| **ANTONIO CULLAR GONZALES,** | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for aggravated battery and use of a deadly weapon in the commission of a crime, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Antonio Cuellar Gonzalez appeals from the district court's judgment entered upon a jury verdict finding him guilty of aggravated battery and use of a deadly weapon in the commission of a crime. Specifically, Gonzalez argues the district court erred in denying his motion for mistrial. Gonzalez additionally maintains the district court abused its discretion when it did not remove a competency evaluation from the presentence investigation report (PSI). For the reasons explained below, we affirm Gonzalez's judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2014, a woman observed a man riding a bicycle down the middle of an alleyway in Boise. A man, later identified as Gonzalez, grabbed a stick approximately three feet long and approached the man on the bicycle. The witness watched Gonzalez use the stick to hit the man at least three times. The first strike caused the victim to fall off the bicycle. While the victim was on the ground, Gonzalez hit the victim at least two more times. Gonzalez then fled the scene. An employee of a nearby homeless shelter followed Gonzalez while the witness dialed 911.

Officer Anderson apprehended Gonzalez several blocks from the incident, but Gonzalez denied knowing anything about the fight or being involved. Officer Anderson informed Gonzalez that a witness had followed Gonzalez from the scene of the fight. Gonzalez then requested an attorney.

At trial, the State played the 911 audio recording for the jury. In court, the witness identified Gonzalez as the attacker and testified that she identified Gonzalez as the attacker to the police once Gonzalez was apprehended. The witness further testified that the victim never said anything to Gonzalez before he was attacked, nor did the victim approach Gonzalez or display a weapon. Gonzalez testified otherwise, indicating that he hit the victim with the stick because the victim came at him with a knife. The firefighter who treated the victim at the scene testified that he found a small personal folding knife with the blade closed clipped to the victim's pocket.

The homeless shelter employee also took the stand. He testified that he watched Gonzalez hit the victim at least three times. The employee testified that he followed Gonzalez as he left the scene, never took his eyes off Gonzalez while following him, provided Gonzalez's location to the police, and eventually pointed Gonzalez out to the police once Gonzalez was apprehended. The employee further testified that he never saw the victim hit Gonzalez, and he never saw the victim with a weapon in his hand.

On cross-examination, the State inquired into the inconsistencies between Gonzalez's testimony on the stand and what Gonzalez told Officer Anderson shortly after the incident. In answering one of the prosecutor's questions, Gonzalez indicated he requested an attorney during his discussion with Officer Anderson. Gonzalez's trial counsel objected and moved for a

mistrial, arguing the prosecutor invited the comment on Gonzalez's invocation of his right to silence. The district court denied the motion.

A jury found Gonzalez guilty of aggravated battery and use of a deadly weapon in the commission of a crime. Gonzalez pled guilty to a persistent violator enhancement. At sentencing, the district court noted that a 2006 competency evaluation was included in the PSI materials, but indicated it did not read the competency evaluation and would not consider it for sentencing. The district court stated it would like to remove the competency evaluation from the PSI materials, but was unsure whether it had the authority. Gonzalez did not object or file a motion to remove the competency evaluation and instead deferred to the district court on the issue. Gonzalez timely appealed from the district court's judgment entered upon the guilty verdict.

## II.

## ANALYSIS

### A. Motion for Mistrial

Gonzalez first contends the district court erred in denying his motion for mistrial. Motions for mistrial in criminal cases are governed by Idaho Criminal Rule 29.1, which authorizes such relief "when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." When we review a denial of a motion for mistrial, the question on appeal is not whether the trial court reasonably exercised its discretion in light of circumstances existing when the mistrial motion was made. Instead, we examine whether the event that precipitated the motion constituted reversible error when viewed in the context of the full record. *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003); *State v. Watkins*, 152 Idaho 764, 765-66, 274 P.3d 1279, 1280-81 (Ct. App. 2012). That is, the query is whether there has been reversible error. Our focus is upon the ultimate impact on the trial of the incident that triggered the mistrial motion. The trial court's refusal to declare a mistrial will only be disturbed if that event, viewed retrospectively, amounted to reversible error. *State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). An error is harmless, not necessitating reversal, if the reviewing court is able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 24 (1967); *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010).

3

Gonzalez argues the district court erred in denying his motion for mistrial because the prosecutor's questions constituted an impermissible inference of guilt from Gonzalez's right to remain silent. The Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. U.S. CONST. amend. V, XIV; IDAHO CONST. art. I, § 13.[1] The Idaho Supreme Court has held that the Fifth Amendment prohibits the State from inferring guilt from a defendant's post-custody silence during its case-in-chief or from using evidence of post-arrest, post-*Miranda* silence for impeachment purposes.[2] *State v. Ellington*, 151 Idaho 53, 60, 253 P.3d 727, 734 (2011). A defendant's right to remain silent attaches upon custody, not arrest or interrogation, and thus a prosecutor may not use any post-custody silence to infer guilt in its case-in-chief. *Id.* "If a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent . . . becomes so diluted as to be rendered worthless." *State v. White*, 97 Idaho 708, 714-15, 551 P.2d 1344, 1350-51 (1976). For instance, in *Ellington*, the prosecutor asked a detective whether he interviewed the defendant. *Ellington*, 151 Idaho at 59, 252 P.3d at 733. The detective responded, "I attempted to." *Id.* The defendant argued that the prosecutor acted improperly by commenting on his post-arrest silence through the questioning of the detective. *Id.* In response, the State maintained that the prosecutor asked the question in a leading way in order to avoid any comment on silence. *Id.* at 59-60, 252 P.3d at 733-34. The Court, however, concluded that "the prosecutor or [the detective] was attempting to, and did, draw attention to [the defendant's] post-arrest silence." *Id.* at 61, 252 P.3d at 735. "Further, there was absolutely no reason for the prosecutor to engage in this line of questioning in the first place, particularly given that he clearly knew the line of questioning would create a high risk of an improper comment on [the defendant's] silence." *Id.* The Court therefore held the prosecutor's question constituted prosecutorial misconduct. *Id.*

A person is in custody, for *Miranda* purposes, from the moment of formal arrest or as soon as the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'"

---

[1] Gonzalez does not argue the Idaho Constitution affords greater protection, so this Court follows the right to remain silent analysis pursuant to the United States Constitution.

[2] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that police must inform individuals of their Fifth Amendment rights prior to conducting a custodial interrogation.

*Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)); *see also State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. *Berkemer*, 468 U.S. at 442; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010).

Here, when Officer Anderson first made contact with Gonzalez, he ordered Gonzalez to "have a seat right there." He instructed Gonzalez to keep his hands out of his pockets and again ordered Gonzalez to have a seat. Officer Anderson asked Gonzalez whether he got in a fight, and informed Gonzalez, "we're gonna hold you here then we're gonna find that out. We're gonna have someone come over here and point you out." Gonzalez thereafter asked for an attorney, and Officer Anderson arrested Gonzalez. Gonzalez's freedom was curtailed to a degree associated with formal arrest because a reasonable person would not have felt free to leave the situation and walk away from the officer. Accordingly, Gonzalez was in custody before his formal arrest and his right to silence attached upon his custody.

At trial, Gonzalez took the stand and testified that he acted in self-defense when he struck the victim with a stick. The prosecutor cross-examined Gonzalez and engaged in the following line of questioning:

> Q: And you heard the audio and the police asked you about the fight in the alleyway?
> A: Yes.
> Q: And you said what fight?
> A: Yes.
> Q: And they asked again about the fight in the alleyway and you say what fight?
> A: Yes. I asked for a lawyer. They didn't put that on there.
> Q: And you say when the officer asks you, did somebody come at you, man? Does somebody come at you, you don't say that they did?
> A: I said I wanted to talk to a lawyer.

The State maintains the prosecutor attempted to demonstrate an inconsistency in Gonzalez's testimony by engaging in that line of questioning because Gonzalez took the stand and admitted to hitting the victim with a stick in self-defense, even though he initially told Officer Anderson that he was not involved in a fight. Through her questions, however, the prosecutor effectively used Gonzalez's post-custody silence for impeachment purposes. The jury had already heard the audio recording of Officer Anderson's discussion with Gonzalez, and Officer Anderson testified

5

to that discussion. The prosecutor therefore did not need to question Gonzalez about the discussion. Moreover, the prosecutor must have foreseen that her line of questioning would draw the jury's attention to Gonzalez's post-custody silence. The reason Gonzalez did not admit involvement in a fight to Officer Anderson was because Gonzalez requested an attorney. The prosecutor could not have expected any other answer to "[Y]ou don't say that they did?" aside from Gonzalez's invocation of his right to silence. We conclude that the prosecutor's use of Gonzalez's post-custody silence for impeachment purposes was improper and constitutes an error in the trial proceedings.

The issue then becomes whether the error is reversible. An error does not necessitate reversal if we are able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman*, 386 U.S. at 24; *Perry*, 105 Idaho at 227, 245 P.3d at 979. Here, we are convinced that the jury would have reached the same conclusion even if the prosecutor did not use Gonzalez's post-custody silence in an attempt to impeach Gonzalez. The jury listened to the 911 call that the witness made immediately after she observed Gonzalez attack the victim. During the 911 call, the witness described the appearance of the attacker--an older Hispanic man. The witness testified during trial and identified Gonzalez as the attacker. The witness testified that she saw Gonzalez pick up a stick and swing it like a baseball bat as he hit the victim at least three times. Moreover, the witness testified that the sound of the stick hitting the man resembled the sound of a gunshot. She never heard the victim say anything to Gonzalez before the victim was attacked, she did not see the victim with any weapons, and she did not see the victim hit or do anything toward Gonzalez before Gonzalez attacked him. The witness testified that she clearly saw Gonzalez's face from no more than three feet away as he left the scene of the incident. And when the police took the witness to the location where Gonzalez was apprehended, the witness identified Gonzalez as the man who attacked the victim. She testified, "I was certain. They put a spotlight on his face so I got a clear view of his face and he was wearing the exact same T-shirt I had seen him wearing in the alley when the incident happened." Finally, an employee at the nearby homeless shelter identified Gonzalez as the man the employee observed attack the victim. The employee testified that he witnessed Gonzalez hit the victim at least three times. He followed Gonzalez as he left the scene and identified Gonzalez as the attacker once the police apprehended Gonzalez. He testified that he never saw the victim hit Gonzalez, and he never saw the victim with a weapon. Based on this overwhelming evidence,

6

we conclude, beyond a reasonable doubt, that the error did not contribute to the verdict. Accordingly, we will not disturb the district court's refusal to declare a mistrial.

**B.  Competency Evaluation**

Gonzalez additionally argues the district court abused its discretion by not removing a competency evaluation from the PSI materials.  Whether the district court erred when it denied a motion to strike or delete portions of the presentence investigation report is reviewed on appeal under an abuse of discretion standard.  *State v. Rodriguez*, 132 Idaho 261, 263, 971 P.2d 327, 329 (Ct. App. 1998).

Gonzalez did not file a motion to remove the competency evaluation, however.  Nor did Gonzalez object when the district court indicated it would leave the competency evaluation in the PSI materials.  Generally, issues not raised below may not be considered for the first time on appeal.  *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).  Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error.  *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971).  In *Perry*, the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error.  The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error:  (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings.  *Id.* at 226, 245 P.3d at 978.

Here, Gonzalez did not raise this issue below, and the district court made no ruling on the issue.  Gonzalez argues otherwise, noting that the district court addressed the issue by indicating it would not remove the competency evaluation based on its conclusion that it might lack the authority to do so.  However, simply because the district court determined it would not remove the competency evaluation does not mean Gonzalez raised the issue below.  Gonzalez never filed a motion to remove the competency evaluation, nor did he object to the district court's decision to remove the competency evaluation.  Thus, Gonzalez never raised the issue, and the district court never had the opportunity to address the issue.

Gonzalez also did not provide argument pertaining to fundamental error. His brief does not explain why or how the competency evaluation issue rises to the level of fundamental error. When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). The reply brief mentions fundamental error briefly, but does not provide argument aside from Gonzalez's proposition that the fundamental error standard does not apply. Moreover, Idaho Appellate Rule 35(a)(4) requires an appellant to raise issues in the initial appellate brief. Issues raised for the first time in a reply brief are not considered. *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). For these reasons, the issue is waived on appeal and we will not consider it.

### III.

### CONCLUSION

The district court did not err in denying Gonzalez's motion for mistrial because even though the prosecutor's use of Gonzalez's post-custody silence for impeachment purposes was improper, it did not constitute reversible error. Moreover, Gonzalez did not preserve the competency evaluation issue for appeal because it was not raised before the district court, and he failed to provide argument before this Court. We therefore affirm Gonzalez's judgment of conviction.

Chief Judge MELANSON **CONCURS**.

Judge GRATTON **CONCURS IN THE RESULT**.