**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39313**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Unpublished Opinion No. 627** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: August 14, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **KEITH PHILLIP SIGLER,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment of conviction, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion for reduction of sentence, <u>affirmed</u>.

David J. Smethers of Sallaz & Gatewood, PLLC, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

PERRY, Judge Pro Tem

Keith Phillip Sigler appeals from his judgment of conviction for possession of material sexually exploiting a child under the age of eighteen and sexual battery of a minor child sixteen or seventeen years of age. Specifically, Sigler asserts that he was denied a fair trial due to the State's ongoing violations of the rules of evidence, rising to the level of prosecutorial misconduct. Sigler also alleges that the district court erred in denying both his motion for a mistrial, based on witness testimony regarding matters that were to be excluded from the jury, and his motion for a judgment of acquittal, asserting the evidence was insufficient to show he committed the acts for the purpose of gratifying a sexual desire. Sigler additionally appeals from the district court's denial of his Idaho Criminal Rule 35 motion for a reduction of his sentences. For the reasons set forth below, we affirm.

1

# I.

## FACTS AND PROCEDURE

Sigler was the owner of a computer sales and service company in Idaho. During the summer of 2007, Sigler and one of his employees met a sixteen-year-old girl whom they encouraged to apply for work at the company. The girl later contacted Sigler, who hired her to do administrative work such as scanning documents into an electronic backup storage system and assisting other employees.

After being employed for a while, the girl asked Sigler if she could start cleaning the office to make more money. Sigler declined that offer, but offered to pay her money to be photographed. The girl inquired as to what type of photographs Sigler meant, to which he explained they would involve her taking off some of her clothes. She expressed discomfort with other people seeing such photographs, but Sigler assured her he would be the only person to view them. The girl had a digital camera she had brought to work, which Sigler used to take photographs of the girl on at least two occasions. On each occasion, Sigler asked the girl to remove articles of clothing to where she was only in her underwear. When taking the photographs, Sigler directed the girl where to sit or stand and how to pose. Sigler then transferred the digital photographs from the camera's memory card to a company computer that was connected to the company's backup system. Sigler paid the girl between $100 and $150 in cash for the photographs on each occasion. While employed by Sigler, the girl became pregnant. Allegedly because she was concerned about finances and being able to support herself and soon-to-be child, the girl used company credit cards to make personal purchases, took roughly $2000 in cash from the company safe to which she had access, and stole a company laptop that she later returned. Sigler confronted the girl on each occasion, and she eventually admitted to all of the misconduct. There were allegations that Sigler agreed not to report the girl's criminal conduct in exchange for her paricipation in sexual conduct, including being photographed and performing oral sex on Sigler. Both photography sessions took place after the girl used the company credit cards and took the cash from the safe, but prior to her taking the company laptop. There was conflicting testimony as to whether the girl quit or was fired from Sigler's employment following the incident with the laptop.

In the months that followed, Sigler showed the topless photographs of the girl to other people who worked in his office. After receiving a tip and interviewing former coworkers that

had seen or knew of the photographs, police secured and executed a search warrant at Sigler's business, which revealed the photographs of the girl on computer drives in the office. Police also interviewed the girl about her relationship with Sigler. Based on the investigation, the State charged Sigler with eight felony counts after indictment by a grand jury: Count I, possession of material sexually exploiting a child; Counts II - VII, sexual battery of a minor; and Count VIII, procurement of prostitution. Sigler pled not guilty to all counts. After a four-day jury trial, the jury found Sigler guilty on the first and second counts, possession of material sexually exploiting a child, Idaho Code § 18-1507, and sexual battery of a minor, Idaho Code § 18-1508A. Of the remaining six counts, the jury returned two verdicts of not guilty and was deadlocked on the remaining four counts.

The district court ordered a presentence investigation report and a psychosexual evaluation. The court sentenced Sigler to a unified ten-year term, with five years determinate, for the possession of material sexually exploiting a child conviction and a concurrent, unified twenty-year term, with ten years determinate, for the sexual battery of a minor conviction. However, the court retained jurisdiction and, at the end of the period of retained jurisdiction, placed Sigler on probation for a period of twelve years. Sigler appealed and also filed an Idaho Criminal Rule 35 motion for a reduction of his sentences, which the district court denied. Sigler amended his notice of appeal to include the denial of the Rule 35 motion and presents four issues to this Court: whether Sigler was denied the right to a fair trial because of numerous violations by the State of the rules of evidence, rising to the level of prosecutorial misconduct; whether the district court erred in denying Sigler's motion for a mistrial; whether the district court erred in denying Sigler's motion for a judgment of acquittal; and whether the district court abused its discretion in denying Sigler's Rule 35 motion.

## II.

## ANALYSIS

### A.    Right to a Fair Trial

Sigler argues he was denied the right to a fair trial because the prosecutor repeatedly violated the rules of evidence, resulting in 115 defense objections over the course of the four-day trial, many of which were sustained. Based on these objections, Sigler asserts the multiple violations of the rules of evidence eventually rose to the level of prosecutorial misconduct and "[a]t some point" violated his right to due process and a fair trial.

3

The State asserts that Sigler is required to meet the fundamental error standard because he did not specifically assert to the district court that his due process rights were violated.[1] The State further argues that, while multiple trial *errors*--harmless in themselves--can be aggregated under principles of due process to determine the fairness of a trial, Sigler cites no authority that multiple *correct* rulings by the district court may be aggregated under the auspice of prosecutorial misconduct to show that the trial was unfair.

Here, Sigler bases his argument on a series of objections he made to witness testimony that were ruled upon by the district court. Sigler's assertion that an accumulation of these objected-to errors violated his rights to due process and a fair trial does not negate the fact that each alleged error was objected to before the district court. Therefore, we will address whether the numerous alleged violations of the rules of evidence by the prosecutor constituted misconduct and resulted in a denial of due process or a fair trial.

A defendant is entitled to a fair trial, but not a perfect trial. *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991); *State v. Estes*, 111 Idaho 423, 428, 725 P.2d 128, 133 (1986). Our system of criminal justice is adversarial in nature and the prosecutor is expected to be diligent and leave no stone unturned, but the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). In reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Id.* When there has been a contemporaneous objection, we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *see State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998). Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Id.* at 368, 972 P.2d at 746.

Sigler alleges he made no less than 115 objections during the State's presentation of evidence; the district court sustained eighty-one of these objections, and Sigler asserts it is

---

[1]    The fundamental error standard applies to unobjected to errors before the district court. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

4

unclear from the record how the judge ruled on at least four of the objections. Sigler further argues that the district court was forced to abandon its role as a neutral arbiter when it advised the State how to proceed in regards to some of the objections or explained its rulings. Finally, Sigler asserts the district court erroneously ruled on many of the objections that were not sustained.

We have reviewed the entire jury trial transcript and conclude Sigler has failed to show prosecutorial misconduct. Most of defense counsel's objections involved testimony that counsel argued was hearsay or alleged the prosecutor's use of leading questions. In various instances, the district court ruled that testimony regarding out-of-court statements was offered for a permissible purpose. That is, the testimony was not inadmissible hearsay because it was not offered for the truth of the matter asserted. Idaho Rule of Evidence 801. The district court gave the jury an instruction that the testimony was to be considered for a limited purpose when appropriate to do so. In many other instances, the district court sustained the hearsay objections, limiting the witness's testimony. The fact that the prosecutor made appropriate arguments or asked a question in support of admitting such evidence--whether or not the district court agreed--is not misconduct, and to hold that it is would unduly limit the prosecutor's ability to be a zealous advocate for the State.

Sigler also made numerous objections alleging error by the prosecutor in asking leading questions. A prosecutor may commit misconduct if a leading question itself provides inadmissible information. *See State v. Frauenberger*, 154 Idaho 294, 302, 297 P.3d 257, 265 (Ct. App. 2013). However, we do not find that any information provided in the prosecutor's leading questions was inadmissible or otherwise harmful.

Finally, Sigler fails to show that the district court, in explaining its ruling, was forced to abandon its neutral role. The district court did not go so far as to instruct the State on how to try the case and, when appropriate, the district court took matters up in a sidebar or out of the presence of the jury. In short, Sigler fails to show that the sheer number of objections and the bases for the rulings rose to the level of misconduct or deprived him of a fair trial. In fact, having reviewed many of the defense objections sustained by the district court, this Court has determined it would have been proper to overrule them. Neither Sigler's disagreement with the rulings nor defense counsel's tactical decision in making numerous objections, many of which

5

we would find nonmeritorious, provide a basis for concluding that the prosecutor committed misconduct or that Sigler was deprived of due process and a fair trial.

**B.     Motion for Mistrial**

Sigler asserts the district court erred in denying his motion for a mistrial. Defense counsel made the motion in response to witness testimony that was outside the scope of a previous ruling by the district court limiting particular evidence. In criminal cases, a motion for a mistrial is governed by Idaho Criminal Rule 29.1. A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983); *accord State v. Norton*, 151 Idaho 176, 192-93, 254 P.3d 77, 93-94 (Ct. App. 2011).

In this case, the State wanted to introduce evidence of photographs of Sigler's wife in various states of undress that were found in the same location as photographs of the girl on hard drives of computers seized from the company. Essentially, the evidence was to be offered to establish time frames, as certain witnesses saw these photographs at the same time they saw photographs of the girl. After objection by defense counsel, the district court ruled that the witnesses could testify to seeing the photographs for purposes of establishing time frames, but could not testify that Sigler's wife was nude, partially dressed, in lingerie, or suggest in any other way that the photographs were sexual in nature.

One of the State's witnesses, upon questioning regarding this evidence, responded that Sigler wanted to show him "[p]hotographs of [Sigler's] wife in a negligee." Defense counsel objected and asked to take the matter up outside of the jury's presence. The district court

6

sustained the objection and then gave a curative instruction: "The Court gave a specific ruling on this. The jury will disregard the answer of the witness with regard to this topic." The district court then excused the jury. After being allowed to question the witness outside the presence of the jury in regards to being advised of the ruling, defense counsel asked the district court to declare a mistrial. The district court allowed the prosecutor to also examine the witness. The witness indicated that the prosecutor did, in fact, advise him as to the ruling disallowing the witness to provide any details of the photographs other than that they were of Sigler's wife. The issue arose as to whether the witness ever actually saw the photographs, and the prosecutor argued that she only intended to use the witness to establish that Sigler mentioned the photographs of his wife--which Sigler intended to show the witness--and at the same time mentioned having photographs of the girl. If not granted a mistrial, defense counsel asked that the witness not be allowed to testify any further because the witness had not actually seen the photographs. The district court ruled that the witness could testify, but only as to the facts of a conversation he had with Sigler, who else was in the room at that time, that Sigler made the statement that he had photographs of the girl on his computer, and that the witness did not look at those photographs. The district court further stated:

> I am not going to take any chance that we have anything again. If this comes up again through another witness, I will declare a mistrial. And that will be the limitation placed on this witness's testimony.
> I have already instructed the jury to disregard the statement he made. I am not going to advise the jury to disregard it a second time because it merely calls more attention to it.
> And I am not going to grant the mistrial because I believe that the error is not a sufficient basis to grant a mistrial. But should it happen again, this Court will grant a mistrial . . . .

Sigler argues that the district court erred in denying the motion for a mistrial for three reasons. First, Sigler asserts the evidence that Sigler showed photographs of his partially-nude wife to other males was highly prejudicial, particularly in light of the charge that Sigler showed partially-nude photographs of an underage girl to other males and the fact that the jury convicted Sigler on two of the counts involving Sigler showing photographs to others. Second, Sigler contends the mistrial should have been granted because the State violated the district court's evidentiary ruling by failing to make the ruling clear to its witness. Underpinning this argument, Sigler asserts the district court also erred in allowing the State to lead its witness in order to abide by the district court's ruling limiting the evidence. Third, Sigler believes the district court should

7

have granted the mistrial because the witness was not competent to testify in regards to the photographs owing to the fact that the witness did not actually see the photographs.

The State responds that the trial was not rendered unfair by the single sentence of testimony on which Sigler relies. Moreover, the State argues the response about Sigler's wife in a negligee was not highly prejudicial because there was no evidence that Sigler violated his wife's privacy or was supposed to keep those photographs confidential. Next, the State points out that Sigler was not charged with showing the photographs of the girl to other males; the State charged Sigler with possession of and taking the photographs. Further, in the context of a mistrial, the focus is not the prosecutor's actions and whether she did or did not properly advise the witnesses of the district court's ruling regarding the photographs of Sigler's wife as evidence, but rather, whether the statement in the context of the full record rendered the trial unfair. Finally, the competency of the witness to testify is a separate question from whether the statement about Sigler's wife in a negligee made the trial fundamentally unfair.

The admission of improper evidence does not automatically require the declaration of a mistrial. *State v. Grantham*, 146 Idaho 490, 498, 198 P.3d 128, 136 (Ct. App. 2008). Where improper testimony is introduced into a trial and the trial court promptly instructs the jury to disregard such evidence, it is ordinarily presumed that the jury obeyed the court's instruction. *Id*. The reviewing court may consider this as a factor in determining whether the error was reversible and whether the district court should have granted a mistrial. *Norton*, 151 Idaho at 193, 254 P.3d at 94. In addition, we also consider the strength of the evidence against the defendant and the significance of the improper testimony. *State v. Watkins*, 152 Idaho 764, 768, 274 P.3d 1279, 1283 (Ct. App. 2012). Any error in introducing improper testimony is harmless, rather than reversible, when the reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *Grantham*, 146 Idaho at 498, 198 P.3d at 136. For example, in *State v. Keyes*, 150 Idaho 543, 248 P.3d 1278 (Ct. App. 2011), the defendant moved for a mistrial after an expert witness, testifying in regards to a house fire, stated that the defendant deliberately set the fire. Whether the defendant accidently or deliberately set the fire was the key issue at trial. However, in the context of the full record, this Court concluded the State introduced compelling evidence that the fire was intentionally set. *Id.* at 545-46, 248 P.3d 1280-81. In light of the overwhelming

8

evidence of the defendant's intent, this Court was convinced the improper testimony did not contribute to the jury's verdict. *Id*. at 546, 248 P.3d at 1281.

Sigler compares his challenge to the issue this Court reviewed in *State v. McMurry*, 143 Idaho 312, 143 P.3d 400 (Ct. App. 2006). In *McMurry*, the defendant challenged a conviction because the prosecutor made statements as to the defendant's failure to testify. This Court did not decide whether the district court erred in declining to grant a mistrial, but rather determined that the prosecutor violated the defendant's constitutional privilege against self-incrimination. We concluded the error was not harmless because the State's evidence rebutting the defendant's self-defense claim was weak and we could not say, beyond a reasonable doubt, that the verdict would have been the same absent the error by the prosecutor. *Id.* at 316, 143 P.3d at 404. We vacated the judgment of conviction and remanded the case for a new trial. *Id.* at 317, 143 P.3d at 405.

*McMurry* is clearly distinguishable from this case. First, the improper testimony by the witness in this case did not implicate Sigler's right against self-incrimination. Second, the evidence in this case, establishing Sigler's knowing and willful possession of sexual photographs of the underage girl, was compelling. Third, the improper testimony occurred on the second day of a four-day trial and only a single sentence is at issue. In *McMurry*, the defendant challenged three different statements by the prosecutor, given in closing arguments just before the jury deliberated. Thus, the holding in *McMurry* does not compel us to reach the same conclusion here.

In this case, both current and former co-workers testified to knowledge of photographs, possessed by Sigler, of the girl in various states of undress. Some of these witnesses gave specific details regarding the content of the photographs, including ones showing the girl bare-chested in Sigler's office. Several witnesses also testified that Sigler casually referenced and/or showed them the photographs on his computer on various occasions. Around the same time frame, Sigler also showed photographs of his wife and his former girlfriend to current and former co-workers. The State introduced the testimony regarding the photographs of Sigler's wife merely to establish time frames to show that the girl was under the age of majority at the time the photographs were taken.

Sigler asserts that the improper testimony regarding the photographs of his wife was highly prejudicial because of the inference the jury could draw that, if he breached his wife's

privacy by showing photographs of her that were sexual in nature, he would do the same to the underage girl. We are not persuaded. The State did not charge Sigler with showing the photographs of the girl to other males or breaching her privacy; it charged Sigler with *possession* of material sexually exploiting a child and sexual battery of a minor. To prove the offenses, the State introduced evidence of an ongoing pattern of conduct by Sigler towards the girl, where he took advantage of a position of power and the girl's vulnerability to obtain the photographs and other improper favors from the girl. In light of the testimony by witnesses about Sigler's relationship with the girl, the girl's own testimony about how Sigler obtained the photographs of her, and the police investigation about the recovery of the photographs of the girl, one reference to a photograph of Sigler's wife in a negligee did not so taint the rest of the evidence as to make the trial unfair. The district court did not err in denying the motion for a mistrial. We are convinced beyond a reasonable doubt that the jury would have reached the same conclusion without the improper testimony.

## C.     Motion for a Judgment of Acquittal

In support of his Idaho Criminal Rule 29(a) motion for a judgment of acquittal,[2] Sigler asserted there was insufficient evidence to support the guilty verdicts on both Count I, possession of material sexually exploiting a child, and Count II, sexual battery of a minor. Rule 29 provides that the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the

---

[2]     Although Sigler calls this a motion to dismiss, in both the transcript and in his written motion made to district court, he asked for a directed verdict of acquittal under Idaho Criminal Rule 29(a).

10

weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

As to Count I, Sigler argues the only factor listed under Idaho Code § 18-1507 that the State charged was "erotic nudity," which as defined means, in relevant part, the display of human female breasts for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved. I.C. § 18-1507(1)(d). Sigler contends there is no evidence in the record that the photographs were taken or utilized to arouse, stimulate, or sexually gratify either the girl or Sigler. In regards to Count II, a person is guilty of sexual battery of a minor under Idaho Code § 18-1508A if that person makes any photographic or electronic recording of a such minor child with the intent of arousing, appealing to or gratifying the lust, passion, or sexual desires of such person, the minor child, or third party. Again, Sigler asserts there is no evidence that the photographs were taken of the girl to arouse, appeal to or gratify the lust or passion of Sigler, the girl, or any other person.

The State asserts the evidence that Sigler asked the girl to undress, took photographs of her in his office in various poses, and then kept and showed the photographs of the girl to others demonstrates his guilt. In other words, there is ample evidence of Sigler's sexual intent in the record.

We preliminarily note that Sigler did not challenge the sufficiency of the evidence as to Count II in the written motion for a judgment of acquittal, nor did he assert a challenge to Count II in his complementary oral motion and argument before the district court. The district court only ruled with respect to Count I, and therefore, we will not address the challenge to Count II. *See State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008) (concluding that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error).

Idaho Code § 18-1507(2), sexual exploitation of a minor, criminalizes the knowing and willful possession of sexually exploitative material. "Sexually exploitative material" means, in relevant part, any image or photograph, digitally or chemically produced, that shows a child engaging in, participating in, observing, or being used for explicit sexual conduct. I.C.

11

§ 18-1507(1)(j). "Explicit sexual conduct" includes "erotic nudity," I.C. § 18-1507(1)(e), which in turn includes the display of human female breasts or the developing breast area of the human female child for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved, I.C. § 18-1507(1)(d).

We recognize that evidence of only the knowing and willful possession of depictions of child nudity, without more, would be insufficient under the statute. *See State v. Morton*, 140 Idaho 235, 238, 91 P.3d 1139, 1142 (2004). There must be evidence that the photographs were taken for the *purpose* of sexual gratification. *See id*. Where specific intent is an essential element of the crime, as in this case, direct evidence of such intent is not required. *State v. Marsh*, 141 Idaho 862, 867, 119 P.3d 637, 642 (Ct. App. 2004); *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct. App. 2000). Instead, such intent may be proven through the use of circumstantial evidence, such as evidence of the defendant's acts, conduct, and surrounding circumstances. *Marsh*, 141 Idaho at 867, 119 P.3d at 642; *Norton*, 134 Idaho at 880, 11 P.3d at 499.

In denying the motion for a judgment of acquittal, the district court stated:

> In this particular case, we have the testimony of the alleged victim with regard to how these pictures were taken, the circumstances under which the pictures were taken. We have the testimony of other individuals who worked in the office that these were drawn up by the defendant to show to other male members in the office.
> We have the alleged victim's testimony as to what the defendant said to her, what the defendant did, the comments that the defendant made. And the Court believes that there is certainly substantial competent evidence that would allow a jury to find guilty beyond a reasonable doubt if it believes the testimony of those witnesses with regard to the photographs, so I would not grant [the motion] under [Rule] 29.

The district court did not err in its conclusion. Based on Sigler's acts, conduct, and surrounding circumstances, a reasonable trier of fact could have inferred the required intent and found, beyond a reasonable doubt, that Sigler took the photographs for the purpose of sexual gratification or stimulation. *See Marsh*, 141 Idaho at 867, 119 P.3d at 642 (concluding evidence was sufficient to infer sexual intent based on the victim's testimony that the defendant touched her genitals with his bare hand as she pretended to sleep); *State v. Parkinson*, 128 Idaho 29, 38, 909 P.2d 647, 656 (Ct. App. 1996) (concluding a rational jury could infer from the victim's testimony that the defendant came to her bed and fondled her on three different occasions that the defendant had the requisite sexual intent); *State v. Matthews*, 124 Idaho 806, 814, 864 P.2d

644, 652 (Ct. App. 1993) (concluding a rational jury could infer from testimony from three children, that the defendant touched them inappropriately while they were playing, that the defendant had the requisite sexual intent); *State v. Bronson*, 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct. App. 1987) (holding there was sufficient evidence concerning the requisite sexual intent where the defendant admitted the acts, but the victim disputed the defendant's characterization of the touching as "teaching").

**D.     Motion for a Reduction of Sentence on Count II**

Sigler asserts the district court abused its discretion by denying his motion for reduction of his sentence on Count II.[3]  A motion for reduction of sentence under Idaho Criminal Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court.  *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989).  In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion.  *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007).  In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence.  *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

Sigler asserts the district court erred because he had no prior convictions and the two counts for which he was found guilty did not involve any physical touching of the victim.  He further argues that the district court erred in imposing the sentences because it based them on improper considerations.  Sigler points out language from the district court, wherein it stated, "[T]here is always a temptation, I think, to sentence a defendant not based upon what the defendant has been found guilty of but what the defendant has been charged with."  Sigler argues that the district court improperly considered the charged conduct and further speculated about the counts upon which the jury could not reach a verdict.

A conviction for sexual battery of a minor carries the possibility of up to twenty-five years in prison.  I.C. § 18-1508A.  The district court initially sentenced Sigler to a unified

---

3       Although Sigler sought a reduction of sentence on both counts before the district court made by a written motion, in his issues presented to this Court, he only challenges the denial of the Idaho Criminal Rule 35 motion as to the sentence for Count II.

twenty-year term, with ten years determinate, for Count II, to run concurrently with the sentence for Count I. However, the district court retained jurisdiction, and after that period, it suspended the sentences originally imposed and placed Sigler on probation for twelve years.

In first imposing the sentence, the district court specifically addressed the facts that Sigler was nearly twice the age of the girl and was in a position of power over her, both because of age and because Sigler employed the girl. The district court also dismissed Sigler's continued assertions that he did not intentionally keep the photographs and noted the lack of credibility in Sigler's testimony about the circumstances under which the photographs were taken. The district court also noted some difficulty with the credibility of the girl's testimony during trial and speculated that the testimony may have been a factor in the jury's inability to reach a verdict on several counts. However, the district court stated, "I still must sentence this defendant on what he has been found guilty of, not with what he has been accused of." The district court then went on to note Sigler's community and family support and lack of any prior criminal record. The district court further noted that, although Sigler committed serious crimes, there was no force used against the girl. However, the district court was also cognizant of the fact that the psychosexual evaluation placed Sigler as a moderate risk to reoffend and, consequently, at the time the sentences were first imposed, probation was not an option. Because the psychosexual evaluator also indicated that Sigler was amenable to treatment in a structured environment, the district court provided Sigler with the opportunity to complete a period of retained jurisdiction. Nonetheless, given the nature of the crime, the district court imposed a significant underlying sentence on Count II of a unified term of twenty years, with ten years determinate.

After the period of retained jurisdiction, the district court placed Sigler on probation for a period of twelve years and suspended the sentences as originally imposed. The district court considered Sigler's success during the period of the retained jurisdiction, his progress in treatment, and his current psychosexual assessment placing him at a low risk to reoffend. Still, the district court noted that Sigler still tended to minimize his behavior and the crimes committed. After considering various aggravating and mitigating factors, the district court ordered Sigler to a term of probation, subject to attending treatment, but did not reduce the underlying sentences.

Thereafter, Sigler filed his Rule 35 motion seeking a reduction in his sentences. Acknowledging that the imposed sentences were within the statutory limits, Sigler argued that

his success during retained jurisdiction, his revival and expansion of his computer business after being placed on probation, and his successful participation in two polygraphs warranted a reduction in sentence. He again reiterated that he acknowledged responsibility for the crimes and that they did not involve physical touching of the victim. He argued additional factors supported a reduction in sentence, similar to ones he asserted at the sentencing hearing and at the jurisdictional review hearing, such as the suffering of his family, his community and family support, his severe financial losses, and that he had been deterred from reoffending by having to serve time during the period of retained jurisdiction.

In denying the Rule 35 motion, the district court found the information provided by Sigler did not warrant a reduction in sentence. The district court noted that the information provided in the polygraph reports indicating that Sigler did not touch the victim, even if true, did not present a basis for determining the sentence was unreasonable. It specifically stated:

> [Sigler's] repeated emphasis on the absence of touching . . . suggests that he has yet to come to grips with the seriousness of his conduct, and flies in the face of his claim that he 'readily concedes his criminal behavior caused him to be in this position and blames no one except himself.'

The district court found that, given the nature of the crimes involving the exploitation of a vulnerable minor by a person in a position of trust, the sentences adequately served the interests of punishment, deterrence, rehabilitation, and protection of society. Finally, the district court noted its leniency in granting retained jurisdiction followed by suspension of the underlying sentences and probation.

Sigler has not shown that the district court abused its sentencing discretion. The transcript reveals that the district court did mention the charged conduct and the counts upon which Sigler was either acquitted or the jury failed to reach a verdict. However, the district court, both during the original sentencing hearing and again on review after the period of retained jurisdiction, indicated that it was basing the sentence on conduct for which Sigler was convicted. Even still, whether the district court considered the charged conduct on the counts the jury did not find guilt is not indicative of an abuse of discretion. When imposing a sentence, tailored to the nature of the crime and the defendant, there is little, if any, limitation on the information the district court can consider. *State v. Flowers*, 150 Idaho 568, 574, 249 P.3d 367, 373 (2011). A sentencing court may rely on past criminal behavior resulting in a conviction, prior uncharged criminal conduct, and a defendant's prior conduct for which he was tried and

acquitted. *Id.* Here, the district court pointedly reviewed the goals of sentencing and considered factors weighing for and against Sigler both in the original sentencing hearing and upon review. Although the sentence is not one that this Court would have imposed, we cannot say that it is plainly excessive under any reasonable view of the facts. *State v. Murillo*, 135 Idaho 811, 815, 25 P.3d 124, 128 (Ct. App. 2001). Therefore, we are constrained to hold that the district court did not err in denying Sigler's Rule 35 motion as to Count II, finding the information did not warrant further leniency from the court. We note, however, that should Sigler's probation ever be revoked, the district court will possess the authority to reduce the sentence at that time.

### III.

### CONCLUSION

We conclude that Sigler has failed to show that the prosecutor committed misconduct or that the prosecutor's conduct required the judge to abandon a neutral role, and consequently, Sigler has not established he was denied a fair trial. We further conclude that the district court did not err in denying the motion for a mistrial or in denying the motion for a judgment of acquittal as to Count I. Lastly, we conclude the district court did not abuse its discretion in denying Sigler's Rule 35 motion for a reduction in sentence in regards to Count II. Accordingly, we affirm the judgment of conviction, as well as the order denying Sigler's Rule 35 motion.

Judge LANSING and Judge GRATTON **CONCUR.**